| | |
|---|---|
| Ron Kerl, Esq., ISB #1768<br>**COOPER & LARSEN, CHARTERED**<br>151 North Third Avenue, Suite 210<br>P.O. Box 4229<br>Pocatello, ID 83205-4229<br>Telephone:     (208) 235-1145<br>Facsimile:      (208) 235-1182<br>Email: ron@cooper-larsen.com | Allan H. Ickowitz, Esq. (*Pro Hac Vice*)<br>**NOSSAMAN LLP**<br>777 South Figueroa Street, 34th Floor<br>Los Angeles, CA 90017<br>Telephone:     (213) 612-7800<br>Facsimile:      (213) 612-7801<br>Email: aickowitz@nossaman.com |

*Attorneys for James Scott Morrow, Danielle Morrow,*
*and Morrow Ranch La Quinta, LLC*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In re:

PAULA LYNNE ZIEGLER,

      Debtor,

Case No. 20-40042-JMM

**CHAPTER 7**

**NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

NOTICE IS HEREBY GIVEN THAT James Scott Morrow, Danielle Morrow and Morrow Ranch La Quinta, LLC have filed a motion with this Court for an Order granting them relief from the automatic stay.

Please take notice that pursuant to Local Bankruptcy Rule 4001.2 and subject to Fed. Bankr R. 9006, any party in interest opposing the Motion must file and serve an objection to the motion **not later that seventeen (17) days after the date of service of the motion**. The objection must specifically identify those matters contained in the Motion that are at issue and any other basis for opposition to the motion. **Absent the filing of a timely objection, the Court may grant the relief without a hearing**. In addition, as required by Local Bankruptcy Rule 4001.2(d)(3), if an objection is filed to this motion, the objection must be served upon movant and upon all parties receiving service of the motion. In accordance with Local Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the Court's calendar clerk to schedule a preliminary hearing. At the time of filing the objection to a motion, the objecting party shall file and serve a notice of such hearing.

In addition, pursuant to Local Bankruptcy Rule 4001.2(g) and 11 U.S.C. § 362(e), 30 days after a request under 11 U.S.C. § 362(a), such stay is terminated with respect to the party in interest making such request, unless the Court, after notice of such a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW James Scott Morrow, Danielle Morrow and Morrow Ranch La Quinta, LLC, a California limited liability company, creditors of the above estate (collectively "Movants"), by and through their attorneys of record Ron Kerl and Allan H. Ickowitz and pursuant to Title 11, United States Code 362, respectfully move the Court for its Order granting relief from the effect of the automatic stay existing by virtue of 11 U.S.C. § 362(a) on the litigation pending in the Superior Court of the State of California for the County of Riverside— Palm Springs ("State Court") described below by annulling, modifying or otherwise terminating the automatic stay with respect to such litigation. Such Order should expressly allow Movants and other parties therein to proceed to final judgment (including entry of judgment) as against the Debtor herein Paula Lynne Ziegler (individually and as Successor Trustee of the Ladeda Trust as defined below to the extent the automatic stay is applicable) for the purpose of prosecuting and liquidating their claims against the Debtor for all purposes including for purposes of the within bankruptcy proceedings and shall permit the filing, service and prosecution of cross-complaints against the Debtor in accordance with applicable non-bankruptcy law so that further proceedings may be had and completed in such litigation.

In support of this Motion, Movants represent the following:

1. Debtor filed its petition under Chapter 7 of the Bankruptcy Code on January 14, 2020 (the "Petition Date"). Prior to the Petition date, specifically on July 23, 2019, Movants filed an action in the Superior Court of the State of California for the County of Riverside—Palm Springs against Brent Dill and Eileen Dill, as Co-Trustees of the Dill Family 2015 Trust, dated September 8, 2015 (the "Dills"), Susan Harvey ("Harvey"), Desert Pacific Properties, Inc., Mark

A. Ladeda, the Debtor herein Paula L. Ziegler ("Debtor")[1], individually and as Successor

Trustee of the Mark A. Ladeda Separate Property Trust, dated November 11, 2014 ("Ladeda

Trust"), Tally Ranch Inc. ("Tally Ranch"), and M & P Ventures #1, Inc. which action is pending

and is denominated as Case No. PSC1905078 ("Underlying Action").  On December 11, 2019,

the Movants filed a First Amended Complaint in the Underlying Action ("Amended Complaint")

containing new factual allegations against the Debtor and defendants Harvey, and Desert Pacific

Properties, Inc.  A true and accurate copy of the Amended Complaint is attached hereto as

Exhibit "A".  As more particularly set forth in the Amended Complaint, the Movants have

suffered damages as a result of misrepresentations and nondisclosures by the defendants,

including the Debtor, respecting the condition of the subject Property as defined therein

regarding defects affecting the Property.

2.     As more particularly set forth in the First Amended Complaint, the Movants have

suffered damages as a result of material misrepresentations and omissions and nondisclosures by

the defendants in the Underlying Action, including the Debtor, regarding the condition of the real

property and improvements thereon located in La Quinta, Riverside County, California which

improvements consisted of an approximately 4,100 square foot home and a 6,000 square foot

barn located at 55075 Monroe Street, La Quinta, California 92253 (the "Property").  On or about

December 15, 2017, Movants James Scott Morrow and Danielle Morrow ("Morrows") acquired

title to the Property from Brent Dill and Eileen Dill, as Co-Trustees of the Dill Family 2015

Trust, dated September 8, 2015.  The purchase agreement between the Morrows and the Dills

provided for the payment of $3,000,000 by the Morrows.  As more fully set forth in the First

---

[1] The Debtor is identified in the within bankruptcy case as Paula Lynn Ziegler and is also
known as such.

Amended Complaint, on or about June 12, 2018, the Morrows transferred their interests in the Property to Movant Morrow Ranch La Quinta, LLC. For insurance purposes, title to the Property was conveyed by Morrow Ranch La Quinta, LLC back to the Morrows in or about September 2019. Prior to acquisition of the Property by the Morrows, the Debtor as Successor Trustee of the Ladeda Trust sold the Property to the Dills in 2017. As more particularly set forth in the Amended Complaint, the defendants, including the Debtor, falsely represented that improvements on the Property were constructed, repaired, expanded, or remodeled in accordance and in compliance with applicable state and local laws, ordinances and codes and with the necessary Building Permits, as defined in the First Amended Complaint, and did not disclose and concealed the fact they did not obtain Building Permits and such construction, repairs, expansion and remodeling were not in compliance with such laws ordinances and codes and further encroached upon an easement.

3.    As set forth more particularly in the Amended Complaint, as a result of the defendants' actions, including those of the Debtor, the Movants will be required to expend substantial funds in rebuilding, repairing, remodeling, reconstructing and rebuilding the improvements on the Property, as appropriate. This will include the massive main house expansion with the necessary Building Permits as defined in the Amended Complaint and in compliance with applicable state law and local ordinances and state and local codes, including the cost of remedying latent defects and violations caused by the Debtor and the other defendants in the Underlying Action and bringing the improvements to code as well as relocation to remedy the existing easement encroachment. The Movants and the City of La Quinta ("City") are still in the process of determining the extent of the violations and the resulting latent defects. As a result of the violations caused by the defendants, including the Debtor, Plaintiffs have been

barred by the City from occupying the home, which of course also renders it completely unusable for vacation or other rental income upon which income the Movants relied in purchasing the Property. Moreover, also as alleged in detail in the Amended Complaint, the City already has required the Movants to pay a fine/citation and will continue to do so.

4.       On January 15, 2020, the then counsel for the Debtor in the Underlying Action served a Notice of Stay of Proceedings upon the other parties therein notifying such parties regarding the automatic stay herein, a true and accurate copy of which is attached hereto as Exhibit "B". The Movants are informed and believe that the defendants other than the Debtor, including the Dills, assert that the Debtor made false representations to them and failed to disclose facts in connection with the Property, and in particular the Debtor's sale of the Property to the Dills in 2017 and that they have indemnity or other claims against the Debtor for any liability that they may have to the Movants in the Underlying Action.  Because of the interrelationship of the alleged claims and defenses in the Underlying Action and to further judicial economy in the litigation, the Movants and the defendants other than the Debtor entered into a Stipulation Staying the Action in the Underlying Action pursuant to which they agreed to stay all proceedings in the litigation pending relief from the automatic stay with respect to the Debtor, notice of a party's request to proceed with the remaining litigation involving the other parties, or otherwise as provided therein. The State Court in the Underlying Action signed its order thereon on February 25, 2020. A true and accurate copy of the "Stipulation Staying the Action and Order Thereon" (the "Stay Order") is attached hereto as Exhibit "C". The State Court in the Underlying Action also has required the Movants to file another amended complaint upon the stay being lifted as described in the Stay Order; Movants understand that the other defendants who are parties thereto intend to file cross-complaints asserting their claims against

the Debtor which will put the issue of the Debtor's potential liability to those other defendants for indemnification or otherwise at issue.

5.      As more particularly set forth in the Amended Complaint, the purchase agreement between the Movants and the Dills provided for mediation; prior to the Petition Date, the parties in the litigation including the Debtor had agreed to engage in mediation proceedings in an effort to resolve the Underlying Action on a negotiated basis. However, a complete resolution of the alleged claims and defenses in the Underlying Action will require a determination of responsibility among all of the defendants therein including the Debtor which cannot occur unless the automatic stay is lifted as sought by the Movants. Moreover, requiring the parties in the State Court litigation to proceed in the Debtor's absence would result in duplicative proceedings including discovery, which itself cannot be completed with the Debtor's participation resulting in substantial increases in expense incurred by the parties, inconvenience to this Court as well as the State Court and the parties and an incomplete determination of the respective claims and alleged defenses thereto. If the stay is not lifted and the Movants are forced to proceed with their claims against the Debtor in an adversary proceeding before this Court, while simultaneously litigating against the remaining non-debtor defendants in State Court, there will be a needless and massive duplication of efforts. Moreover, the Debtor will not suffer prejudice as a result of granting the requested relief and any prejudice will be outweighed by the harm to the Movants and other non-debtor parties if this Court does not grant the motion.

6.      Cause exists under 11 U.S.C. § 362(d) for the annulment and termination of the automatic stay as it respects the Underlying Action as requested by the Movants. [The Ninth Circuit has identified twelve general factors to be considered when evaluating a request for relief from stay for "cause" under Section 362(d)(1). *In re Tucson Estates*, 912 F.2d 1162 (9th Cir.

1990); *Azam v. U.S. Bank, N.A.*, 690 Fed. Appx. 484 (9th Cir. 2017); *see also In re Mazzeo*, 167 F.3d 139, 142 (2nd Cir. 1999) (not all of the twelve factors identified for consideration in evaluating stay relief motions will be relevant in every case). These factors involve the same considerations that bankruptcy courts use to determine whether or not to abstain in favor of a state court civil proceeding because they are closely related to those relevant to a request for relief from stay to continue prosecution of such a proceeding. *In re Tucson Estates*, 912 F.2d at 1166; see also *Shepard v. Patel (In re Patel)*, 291 B.R. 169, 172 (Bankr. D. Ariz. 2003) (stay relief shall be granted upon a showing of cause which has no clear definition and is determined on a case-by-case basis). Those criteria establish that the Movants' request for relief from the automatic stay should be granted for the following reasons, which reasons are in addition to weighing the relative harms and the consequences of litigating the parties' claims on a piecemeal and duplicative basis discussed above:

(a)     Relief will promote the efficient administration of the Debtor's bankruptcy estate by allowing the parties in the Underlying Action to liquidate their claims against the Debtor for purposes of the within bankruptcy proceedings and will not affect the liquidation of property of the bankruptcy estate;

(b)     Non-bankruptcy law predominates over bankruptcy law with respect to Movants' and defendants' claims against the Debtor;

(c)     As disclosed by the Amended Complaint, the applicable law and facts in the Underlying Action are complex;

(d)     Movants' claims and any claim of defendants against the Debtor already are the subjects of the Underlying Action, a related proceeding, which has been pending for nearly 9 months:

(e)     There is no independent jurisdictional basis for a bankruptcy court to hear the matters involved in the Underlying Action;

(f)     The subject matter of the Underlying Action is remote from the within bankruptcy case and its determination its determination may be necessary to fully administer this bankruptcy case;

(g)     The substance of the Underlying Action is not core;

(h)     Severing underlying claims from core bankruptcy matters in the bankruptcy case to allow judgment to be entered in the State Court with enforcement left to the bankruptcy court is feasible;

(i)     Granting the requested relief will alleviate the burden on the bankruptcy court's docket;

(j)     Movants have not engaged in forum shopping;

(k)     Parties in the Underlying Action are entitled to a jury trial of their claims against the Debtor to the extent they request a jury trial thereon;

(l)     The Underlying Action involves several non-debtor parties.

7.     Notwithstanding the terms and provisions of Rule 7062 of the Rules of Bankruptcy Procedure, the order terminating the automatic stay should be deemed effective upon its entry by the Court.

DATED this 25th day of March, 2020.

> **COOPER & LARSEN, CHTD.**
> **NOSSAMAN LLP**
> *Attorneys for Scott James Morrow, Danielle*
> *Morrow and Morrow Ranch La Quinta, LLC*
>
> By /s/Ron Kerl
>     Ron Kerl

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on the 25th day of March, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

US Trustee
ustp.region18bs.ecf@usdoj.gov

Ron Kerl
ron@cooper-larsen.com

Thomas Daniel Smith
Tsmith8206@cableone.net

Ryan E. Farnsworth
ryan@averylaw.net

Allan H. Ickowitz
aickowitz@nossaman.com

R. Sam Hopkins
AWilliams32@cableone.net

AND, I HEREBY CERTIFY that I have mailed by United States Postal Service the foregoing document(s) to the following non-CM/ECF Registered Participant(s).  (List names and mailing addresses):

Paula Lynne Ziegler
1966 N. Tatonka Ln.
Inkom, ID 83245

Prime Time Auctions
3400 S 5th
Pocatello, ID 83201

By  /s/ Ron Kerl
        Ron Kerl

# EXHIBIT "A"

1  NOSSAMAN LLP
   JOHN J. FLYNN III (SBN 76419)
2  jflynn@nossaman.com
   GREGORY W. SANDERS (SBN 78023)
3  gsanders@nossaman.com
   18101 Von Karman Avenue, Suite 1800
4  Irvine, CA 92612
   Telephone: 949.833.7800
5  Facsimile:  949.833.7878

6  NOSSAMAN LLP
   GABRIELA S. PEREZ (SBN 322161)
7  gperez@nossaman.com
   777 S. Figueroa Street, 34th Floor
8  Los Angeles, CA 90017
   Telephone:  213.612.7800
9  Facsimile:  213.612.7801

10 Attorneys for Plaintiffs JAMES SCOTT MORROW, an individual;
   DANIELLE MORROW, an individual; and MORROW RANCH
11 LA QUINTA, LLC, a California limited liability company

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13            FOR THE COUNTY OF RIVERSIDE – PALM SPRINGS

14

15 JAMES SCOTT MORROW, an individual;          Case No:    PSC1905078
   DANIELLE MORROW, an individual; and
16 MORROW RANCH LA QUINTA, LLC, a             Assigned to:
   California limited liability company,       Hon. Kira L. Klatchko
17                                             Dept: PS1 (For Law and Motion Only)
              Plaintiffs,
18                                             **FIRST AMENDED COMPLAINT FOR:**
          vs.                                  **(1) BREACH OF WRITTEN CONTRACT**
19                                             **– SELLING DEFENDANT;**
   BRENT DILL and EILEEN DILL, as Co-          **(2) NEGLIGENCE – PRIOR OWNER**
20 Trustees of the Dill Family 2015 Trust, dated   **DEFENDANTS;**
   September 8, 2015; SUSAN HARVEY, an         **(3) FRAUDULENT INTENTIONAL**
21 individual; DESERT PACIFIC PROPERTIES,      **MISREPRESENTATION – DEFENDANT**
   INC., a California corporation; MARK A.     **ZIEGLER AND SUCCESSOR TRUSTEE**
22 LADEDA, an individual; PAULA L.             **DEFENDANT;**
   ZIEGLER, individually and as Successor      **(4) FRAUDULENT CONCEALMENT–**
23 Trustee of the Mark A. Ladeda Separate      **SELLING DEFENDANT AND BROKER**
   Property Trust, dated November 11, 2014;    **DEFENDANTS;**
24 TALLY RANCH INC., a Nevada corporation;     **(5) FRAUDULENT INTENTIONAL**
   M & P VENTURES #1, Inc., a Nevada           **MISREPRESENTATION AND**
25 corporation; and DOES 1-60, inclusive,      **CONCEALMENT – SELLING**
                                               **DEFENDANT;**
26                                             **(6) NEGLIGENT**
              Defendants.                      **MISREPRESENTATION – SELLING**
27                                             **DEFENDANT AND BROKER**
                                               **DEFENDANTS**
28

                                    - 1 -
                          FIRST AMENDED COMPLAINT
   57271391.v1

1    Plaintiffs James Scott Morrow and Danielle Morrow, as individuals, and Morrow Ranch

2    La Quinta, LLC, a California limited liability company, allege as follows:

3                                              **PARTIES**

4    1.    Plaintiffs James Scott Morrow and Danielle Morrow purchased an approximately

5    4,100 square foot home and a 6,000 square foot barn located at 55075 Monroe Street, La Quinta,

6    California 92253 (the "Property"). Plaintiffs James Scott Morrow and Danielle Morrow entered

7    into a contract for the sale and purchase of the Property ("Purchase Agreement") on or about

8    September 11, 2017, which is the subject of this dispute.

9    2.    Plaintiff Morrow Ranch La Quinta, LLC, is, and at all times herein mentioned

10    was, a California limited liability company doing business in the County of Riverside. On or

11    about June 12, 2018, Plaintiffs James Scott Morrow and Danielle Morrow transferred their

12    interests in the Property to Plaintiff Morrow Ranch La Quinta, LLC (collectively, "Plaintiffs").

13    3.    Plaintiffs are informed and believe and thereon allege that Defendants Brent Dill

14    and Eileen Dill, as Co-Trustees of the Dill Family 2015 Trust, dated September 8, 2015 ("Selling

15    Defendant"), made repairs and/or improvements to the Property without acquiring necessary

16    permits as required by local, state, and/or the building code ("Building Permits") and sold the

17    Property that is subject to this dispute to Plaintiffs.

18    4.    Plaintiffs are informed and believe and thereon allege that defendant Susan

19    Harvey, an individual ("Broker"), is, and at all times relevant to this action was, a California

20    licensed real estate sales agent and exclusively represented the Selling Defendant in the sale of

21    the Property.

22    5.    Plaintiffs are informed and believe and thereon allege that defendant Desert

23    Pacific Properties, Inc., a California corporation, is doing business in California in accordance

24    with the laws of the State of California, and has conducted business within the County of

25    Riverside, State of California, including, but not limited to, sale of the Property subject to this

26    dispute.

27

28

FIRST AMENDED COMPLAINT

57271391.v1

1      6.    Plaintiffs are informed and believe and thereon allege that defendant Mark A.

2 Ladeda, as an individual ("Defendant Ladeda"), owned the Property and made repairs and/or

3 improvements to the Property without acquiring any of the necessary Building Permits.

4      7.    Plaintiffs are informed and believe and thereon allege that defendant Paula L.

5 Ziegler, as an individual ("Defendant Ziegler"), and as Successor Trustee of the Mark A. Ladeda

6 Separate Property Trust, dated November 11, 2014 ("Ladeda Trust") ("Successor Trustee

7 Defendant"), made repairs and/or improvements to the Property without acquiring any of the

8 necessary Building Permits.  Successor Trustee Defendant conveyed the Property to the Selling

9 Defendant.

10     8.    Plaintiffs are informed and believe and thereon allege that Tally Ranch Inc., a

11 Nevada corporation ("Tally Ranch"), at all times herein mentioned, made repairs and/or

12 improvements to the Property without acquiring any of the necessary Building Permits.

13     9.    Plaintiffs are informed and believe and thereon allege that M & P Ventures #1,

14 Inc., a Nevada corporation ("M & P Ventures"), at all times mentioned herein, made repairs

15 and/or improvements to the Property without acquiring necessary Building Permits.

16     10.    The true names and capacities of defendants named as Does 1 through 60,

17 inclusive, whether individual, corporate, associate or otherwise ("Doe Defendants") are unknown

18 to Plaintiffs.  Plaintiffs therefore name the Doe Defendants by such fictitious designations.

19 Plaintiffs will amend this complaint to allege the true identities and capacities of the Doe

20 Defendants when ascertained.

21     11.    Plaintiffs are informed and believe that at all times relevant to this action, each of

22 the defendants Does 1 through 60, inclusive, were the agents, servants, and employees of each of

23 the other defendants and, in doing the things mentioned in this complaint, were acting within the

24 course and scope of their authority as such agents, servants, and employees.

25     12.    Pursuant to paragraph 22 of the Purchase Agreement (defined below), the

26 Plaintiffs and the Selling Defendant are required to first attempt in good faith to mediate any

27 dispute or claim arising out of this Purchase Agreement and if any dispute or claim is not settled

28 through mediation, it must be decided by binding arbitration.  Plaintiffs, however, without

FIRST AMENDED COMPLAINT

57271391.v1

1  waiving or violating the mediation and arbitration provisions, may file a court action to preserve

2  the statute of limitations.

3  **JURISDICTION AND VENUE**

4    13. Pursuant to Code of Civil Procedure section 395, jurisdiction is proper in

5  California, and the above-entitled court is the proper venue for this action because at all times

6  mentioned herein, the acts giving rise to this action occurred in the County of Riverside, and the

7  Property which gives rise to the claims asserted herein is located in the County of Riverside,

8  State of California and within this judicial district.

9  **FACTS**

10 **The Property**

11   14. Plaintiffs entered into a written contract with the Selling Defendant for the sale

12 and purchase of the Property on or about September 11, 2017, and escrow closed on December

13 15, 2017.   A true and correct copy of the Residential Purchase Agreement and Joint Escrow

14 Instructions, dated September 11, 2017, including Addendums One and Two, dated September

15 10, 2017 (previously defined as the "Purchase Agreement"), is attached hereto as Exhibit "A"

16 and incorporated herein by reference.

17   15. The Selling Defendant hired Broker, who is co-owner, director, and secretary of

18 Desert Pacific Properties, Inc. (collectively "Broker Defendants"), for the sale of the Property.

19 Selling Defendant and Broker Defendants advertised the Property as a "Tuscan Style Equestrian

20 Estate," and in bold large font on the sales brochure noted: "potential income in excess of

21 $200,000."  And in the Multiple Listing Service ("MLS") listing ("MLS Listing"), Broker

22 Defendants and Selling Defendant further stated: "Top income producing ultra luxury vacation

23 rental in La Quinta, California, one of the hottest short term rental markets in the United States."

24 A true and correct copy of the MLS Listing is attached hereto as Exhibit "B" and incorporated

25 herein by reference.

26   16. The Selling Defendant and Broker Defendants represented to Plaintiffs that the

27 Plaintiffs could make revenue by renting the Property.  Specifically, on September 5, 2017, the

28 Broker Defendants emailed Plaintiffs' real estate broker a list of all past vacation rental income

- 4 -
FIRST AMENDED COMPLAINT

57271391.v1

1  for weekend events (Coachella, Stage Coach, Memorial Weekend, etc.) as well as the anticipated

2  rates for the next year. The vacation rental income for event weekends alone totaled $130,000,

3  and the anticipated vacation rental income for upcoming event weekends (Desert Trip) totaled

4  $75,000. Broker Defendants further stated that the "summer rates have been $1,300 to $1,500

5  per night." Broker Defendants also stated that there was revenue to be made from vacation

6  "rental income for non-event weekends," and that the Property had additionally been promoted

7  by Selling Defendant for weddings, etc. In the email Broker Defendants attached pictures from

8  the Bono Diesel party (where the rental was $75,000), and included links to the event.

9    17.    In fact, the proper permits for short-term vacation rentals and events were not in

10  place. Moreover, the proper Building Permits for legal occupancy of the main house were not in

11  place. The Property could not legally produce any income when the Plaintiffs purchased it.

12    18.    Prior to the purchase of the Property, Plaintiffs reviewed the listing of the

13  Property in the MLS and came across the listing by Successor Trustee Defendant from a

14  previous cancelled transaction ("Original MLS Listing"). The listing explicitly noted that the

15  Property had been "[r]emodeled and extended and updated with permits on all!!" A true and

16  correct copy of the Original MLS Listing is attached hereto as Exhibit "C" and incorporated

17  herein by reference.

18    19.    At the time the Selling Defendant sold the Property to the Plaintiffs, the Selling

19  Defendant represented in Section C of the Real Estate Transfer Disclosure Statement

20  ("Disclosure Statement") and Addendum One to the Disclosure Statement dated September 12,

21  2017, that the only additions, structural modifications, or other alterations/repairs that were made

22  to the Property without the necessary Building Permits were within the "barn house."

23    20.    Selling Defendant also represented in Section C of the Disclosure Statement that

24  they were not aware of any easements that may affect the interest in the Property.

25    21.    Further, in Addendum One to the Purchase Agreement, Plaintiffs requested

26  various repairs and, according to paragraph 16 of the Purchase Agreement, repairs to be

27  performed by Selling Defendant (or through others hired by the Selling Defendant) were to

28

- 5 -
FIRST AMENDED COMPLAINT

57271391.v1

1    comply with applicable law, including governmental permits, inspection, and approval

2    requirements. Repairs were to be performed in a good and skillful manner.

3         22.    During escrow the Selling Defendant and Broker Defendants provided copies of

4    permits for the Property, which included generic descriptions, which lead Plaintiffs to believe

5    that the entire Property was permitted with the exception of the disclosed unpermitted additions

6    and modifications within the barn house listed in the Addendum to the Disclosure Statement.

7    The City of La Quinta ("City") does not keep copies of plans submitted when applying for

8    permits.

9            **Prior Property Owners: Unpermitted Repairs and/or Improvements and**

10               **Resulting Latent Defects**

11         23.    Plaintiffs are informed and believe and thereon allege that the Selling Defendant,

12    Defendant Ladeda, Defendant Ziegler, Successor Trustee Defendant, Tally Ranch, and M & P

13    Ventures (collectively referred to as "Prior Owner Defendants"), and Does 1-10 and 21-60,

14    inclusive, made various repairs and/or improvements to the Property without the necessary

15    Building Permits. Specifically, Prior Owner Defendants and Does 1-10 and 21-60, inclusive,

16    developed, performed or furnished the design, specifications, surveying, planning, supervision,

17    testing, or observation of construction or construction of an improvement on the Property in such

18    a manner that the house has numerous latent defects (some of which are still to be discovered

19    pending further investigation by the City.

20         24.    Plaintiffs are informed and believe and thereon allege that M & P Ventures owned

21    the Property for a very short period of time during late 2007. Defendant Ladeda was the

22    President of M & P Ventures, and on or about December 12, 2007, M & P Ventures conveyed

23    the Property to Tally Ranch. Tally Ranch owned the Property from on or about December 12,

24    2007, through April 23, 2013. Defendant Ziegler was the President of Tally Ranch and

25    Defendant Ladeda was the Secretary of Tally Ranch. On or about April 23, 2013, Tally Ranch

26    conveyed the Property to Defendant Ladeda. On or about February 24, 2015, Defendant Ziegler

27    conveyed the Property to Defendant Ladeda, via an interspousal deed. Defendant Ladeda soon

28    after, on or about April 8, 2015 (two days before passing away on April 10, 2015), conveyed the

-6-
57271391.v1

1 | Property to the Ladeda Trust. Thereafter, on or about February 3, 2017, Defendant Ziegler, as
2 | Successor Trustee to the Ladeda Trust, conveyed the Property to the Selling Defendant.

3 |       25.    Plaintiffs are informed and believe and thereon allege that Prior Owner
4 | Defendants and Does 1-10 and 21-60, inclusive, developed, performed or furnished the design,
5 | specifications, surveying, planning, supervision, testing, or observed the construction or
6 | construction of an improvement on the Property with the full knowledge that the necessary
7 | Building Permits were not obtained.

8 |       26.    Plaintiffs are informed and believe and thereon allege that Defendant Ziegler was
9 | deeply involved in the construction of the house and all other improvements, not only while an
10 | officer of Tally Ranch, but also while Defendant Ladeda owned the Property, and up to the time
11 | when Defendant Ziegler conveyed the Property to Selling Defendant as Successor Trustee to the
12 | Ladeda Trust.

13 |       27.    Especially, Plaintiffs are informed and believe and thereon allege that while
14 | Defendant Ziegler was President of Tally Ranch, Tally Ranch, under the direction of Defendant
15 | Ziegler, developed, performed or furnished the design, specifications, surveying, planning,
16 | supervision, testing, or observed the construction or construction of an improvement.  Defendant
17 | Ziegler and Defendant Ladeda, at the time of construction, knew that large portions of the main
18 | house and patio were being constructed over an existing 10-foot wide Coachella Valley Water
19 | District ("CVWD") easement for Irrigation Lateral No. 121.6.

20 |       28.    Specifically, between 2009 and 2011, the main house underwent major
21 | improvements and was massively extended, all under the oversight and direction of Defendant
22 | Ziegler.  Defendant Ziegler throughout the years, from on or about 2009 until she sold the
23 | Property to Selling Defendant in 2017, represented herself to others, including the City, as the
24 | owner of the Property.

25 |       29.    On or about September 25, 2007, Defendant Ziegler appeared in front of the
26 | City's Planning Commission to present and discuss in detail her application for Site
27 | Development Permit 2007-893, for the construction of the 5,700 square foot addition to the
28 |

- 7 -
FIRST AMENDED COMPLAINT

57271391.v1

1 Property.  A true and correct copy of the City's Planning Commission Meeting held on
2 September 25, 2007, is attached hereto as Exhibit "D" and incorporated herein by reference.
3      30.    In or about late 2011, while Tally Ranch was the owner of the Property,
4 Defendant Ziegler lodged with the City construction plans for a pool permit.  The plans, dated
5 November 10, 2010, identify Defendant Ziegler as the owner and builder, and are titled: "Ziegler
6 Residence."  A true and correct copy of the Pool Layout Plans dated November 10, 2010, is
7 attached hereto as Exhibit "E" and incorporated herein by reference.
8      31.    Additionally, in or about late 2011 and early 2012, there was a water leak within
9 the main house which prompted a massive renovation of the main house, particularly the kitchen.
10 The proposed floorplan modifications to the main house is dated April 11, 2012 and the project
11 is titled: "New Floor Plan for Mr. and Mrs. Ziegler."  A true and correct copy of the Floor Plan
12 for Mr. and Mrs. Ziegler dated April 11, 2012 is attached hereto as Exhibit "F" and incorporated
13 herein by reference.  But during that period, there are no Building Permit copies supporting any
14 improvements or repairs to the Property.
15      32.    While the Ladeda Trust was nominally owner of the Property and before
16 Defendant Ziegler filed the Affidavit of Death of Trustee and Affidavit of Successor Trustee, she
17 applied for a permit, on or about October 19, 2015, with the City for an electrical panel.  In the
18 building permit application, Defendant Ziegler identified herself as: "Paula Ziegler Ladeda," and
19 as the owner of the Property.  A true and correct copy of the Electric Panel Building Permit is
20 attached hereto as Exhibit "G" and incorporated herein by reference.
21      33.    Plaintiffs are informed and believe that Defendant Ziegler developed this scheme
22 of hiding behind corporate and business entities, and most recently hiding behind her "successor
23 trustee" capacity, in an attempt to immunize herself from liability for her wrongful conduct in
24 concealing the lack of Building Permits for the main house and improvements.
25      34.    Defendant Ziegler consistently disregarded the "veil" for corporate and other
26 business entities that, in name only, held the Property, and likewise disregarded any claimed
27 ownership of the Property in a trustee capacity.  Therefore, she may not obtain from the Court
28 the protections otherwise afforded to individuals by corporate ownership or by a trustee capacity.

57271391.v1

35.     The failure of Defendant Ziegler to acquire the necessary Building Permits for the massive addition to the main house and the renovation in 2012 resulted in the improvements being built in such a way that they contain numerous defects (most, if not all, not reasonably discoverable by a careful inspection).

36.     The City has determined that the improvements and repairs made, in particular the extensive improvements to the main house between 2009 and 2012 violate local, state, and building code requirements. Specifically, the following structural additions are unpermitted and new plans are required: (1) the entire main house, including the master bedroom; (2) the game room addition; (4) the shade Structure; and (5) 600 amp Electrical. In order for the City to determine additional defects, the skeleton of the main house will need to be exposed in certain areas.

37.     Plaintiffs are informed and believe and thereon allege that Selling Defendant developed, performed or furnished the design, specifications, surveying, planning, supervision, testing, or observed the construction or construction of an improvement, with the full knowledge that the necessary Building Permits from local building authorities were not obtained and that such repairs and/or improvements were potentially deficient, defective, and performed below requisite local, state, and building code requirements.

38.     Plaintiffs were not told by any of the Defendants about the extensive unpermitted repairs and improvements to the Property identified above, or of any of the resulting latent defects in the main house, and are now being forced by the City to bring the Property to code. Discovery and investigation and testing of the Property are continuing and other problems are and/or may be discovered, and Plaintiffs reserve the right to seek leave to amend and/or supplement this action upon discovery of additional latent defects.

**Resulting Violations**

39.     After purchasing the Property, Plaintiffs decided to improve the Property and sought to get the required Building Permits.

57271391.v1

1    40.    On October 9, 2018, to Plaintiffs' surprise, Plaintiffs were notified by the City

2   that Plaintiffs were in violation of the City's Municipal Code.  Specifically, Plaintiffs were

3   notified of the following violations and corresponding corrective actions:

4          (a)    California Building Code ("CBC") section 105.1 (Permits Required) –

5   Under CBC section 105.1: "Any owner or authorized agent who intends to construct, enlarge,

6   alter, repair, move, demolish or change the occupancy of a building or structure, or to erect,

7   install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or

8   plumbing system, the installation of which is regulated by this code, or to cause any such work to

9   be performed, shall first make application to the building official and obtain the required permit."

10  Plaintiffs are being forced to submit all required plans to obtain a building permit.  Specifically,

11  Plaintiffs are to obtain a building permit for the living quarters additions.

12         (b)    La Quinta Municipal Code ("LQMC") Title 11, Chapter 11.72, section

13  11.72.030, subdivision (M) (Uniform Code) – Under LQMC section 11.72.030, subdivision (M):

14  "Violation of any of the zoning or sign ordinances of the city or any of the uniform codes

15  adopted by the city including the Uniform Building Code, Uniform Code for the Abatement of

16  Dangerous Buildings, plumbing code, electrical code, mechanical code, swimming pool code,

17  fire code, health code and Uniform Housing Code."  Plaintiffs are being forced to take

18  immediate action to correct the violations.

19         (c)    LQMC Title 11, Chapter 11.72, section 11.72.030, subdivision (A)

20  (Abandonment/Partial Construction) – Under LQMC section 11.72.030, subdivision (A):

21  "Buildings or structures which are abandoned, partially destroyed or in a state of partial

22  construction."  Plaintiffs are being forced to obtain all required permits, inspections

23  approvals from the City's Building and Safety Department and to complete all the necessary

24  repairs, construction or demolitions.

25    41.    On March 7, 2019 the City of La Quinta made additional inspections on the

26  Property and mailed the Plaintiffs a "Final Notice of Violation" notifying Plaintiffs that if the

27  violations mentioned above were not corrected in ten (10) days from the date of the notice, an

28  administrative citation would be issued until Plaintiff complies with the City's Municipal Code.

- 10 -

FIRST AMENDED COMPLAINT

57271391.v1

1  As a result, Plaintiffs have been forced to pay a $400 fine/citation for the unpermitted

2  improvements and the fine/citations will continue to accrue.

3      42.    The Plaintiffs and the City are still in the process of determining the extent of the

4  violations and the resulting latent defects. As a result of the violations, Plaintiffs have been

5  barred by the City from occupying the home, which of course also renders it completely

6  unusable for vacation or other rental income.

7  **Easement Encroachment**

8      43.    In addition, or about May 23, 2019, Plaintiffs received a letter from the CVWD

9  dated May 23, 2019, in which the CVWD stated that large portions of the main house (the study,

10  master bedroom, master bath, and a bedroom) and patio within the Property were encroaching

11  within an existing 10-foot wide CVWD easement for Irrigation Lateral No. 121.6 ("Lateral").

12  Selling Defendant did not disclose the CVWD easement to Plaintiffs.

13      44.    Because CVWD requires access to be able to maintain the Lateral within the

14  easement, Plaintiffs must now relocate the Lateral which is under the existing main house and

15  pavers and must either relocate the trees located above the Lateral or relocate the Lateral.

16  Plaintiffs are not aware of a location to which the Lateral can be moved, and removal of

17  structures and trees would be damaging to the overall Property, and extremely costly.

18      45.    If no action is taken CVWD will remove any structure or trees directly above the

19  Lateral and will invoice the Plaintiffs for the cost of removal.

20  **FIRST CAUSE OF ACTION**

21  **(For Breach of Written Contract Against Selling Defendant and Does 1-10, inclusive)**

22      46.    Plaintiffs incorporate by this reference, as though fully set forth, each and every

23  allegation contained in paragraphs 1-45, inclusive.

24      47.    Plaintiffs entered into a written Purchase Agreement with Selling Defendant, on

25  or about September 11, 2017. The Purchase Agreement called for Plaintiffs to provide

26  $3,000,000 in monies and for Selling Defendant to convey the Property to Plaintiffs.

27      48.    Plaintiffs have performed all conditions, covenants, and promises required by the

28  Purchase Agreement in accordance with the terms and conditions of the Purchase Agreement.

- 11 -

1    49.    Plaintiffs are informed and believe and thereon allege that Selling Defendant

2  failed to provide Plaintiffs with a well-constructed residence which met the applicable standard

3  of care for construction, development and sale, and otherwise violated the written provisions of

4  the Purchase Agreement.  The Property suffered from latent defects (defects not discoverable by

5  a reasonably careful inspection) due to the undisclosed unpermitted improvements Selling

6  Defendant knew about and/or made to the Property.

7    50.    In Addendum One to the Purchase Agreement, Plaintiffs requested, among other

8  things, the following repairs:

9        (a) Septic Tank to be installed to code;

10        (b) Repair HVAC unit;

11        (c) Install operable lighting in the master bedroom and laundry room;

12        (d) Repair wiring that rodents had chewed;

13        (e) Repair hot and cold water lines at the shower valve for hall bathroom

14            since are were reversed;

15        (f) Repair flue vent at the top of water heater; and

16        (g) Remove flex piping at sink drain lines and install approved drain line

17            piping.

18    51.    Selling Defendant breached the Purchasing Agreement as set forth herein in

19  numerous respects, including: (1) by failing to comply with applicable law, including retaining

20  governmental permits and inspections when making Plaintiffs' requested repairs as some of

21  those repairs required permits; and (2) by failing to make repairs in a good and skillful manner.

22    52.    Plaintiffs are informed and believe and thereon allege that Selling Defendant

23  failed to acquire Building Permits for repairs made pursuant to the Purchase Agreement and

24  concealed construction deficiencies, code violations, and illegal construction.

25    53.    As a direct and proximate result of Selling Defendant's conduct, Plaintiffs have

26  been harmed since Plaintiffs are now being forced to bring the Property up to code.  Plaintiffs

27  have suffered general damages and will continue to suffer damages in an amount to be

28  determined by proof at trial.

FIRST AMENDED COMPLAINT

57271391.v1

1

**SECOND CAUSE OF ACTION**

2

**(For Negligence Against Prior Owner Defendants and Does 1-10 and 21-60, inclusive)**

3        54.    Plaintiffs incorporate by this reference, as though fully set forth, each and every

4   allegation contained in paragraphs 1-45 and 49-53, inclusive.

5        55.    The Prior Owner Defendants and Does 1-10 and 21-60, inclusive, were under a

6   duty to exercise ordinary and appropriate care in making repairs and/or improvements (including

7   when developing, performing or furnishing the design, specifications, surveying, planning,

8   supervision, testing, or observation of construction) to the Property or otherwise to avoid

9   reasonably foreseeable injury to users and purchasers of the Property and structures in the subject

10  Property.  Prior Owner Defendants and Does 1-10 and 21-60, inclusive, knew or should have

11  foreseen with reasonable certainty that users and purchasers would suffer the monetary damages

12  set forth herein if said Prior Owner Defendants and Does 1-10 and 21-60, inclusive, failed to

13  perform their duty to cause the subject Property and the subject structures to be designed,

14  engineered, and completed in a proper fashion, with all necessary Building Permits.

15       56.    In making repairs and/or improvements to the Property, especially the massive

16  main house expansion, said Prior Owner Defendants and Does 1-10 and 21-60, inclusive, failed

17  and neglected to perform and/or observe the work, labor and services properly or adequately in

18  that each said Prior Owner Defendants and Does 1-10 and 21-60, inclusive, so negligently and

19  carelessly developed, performed, supervised, or constructed the Property such that all (or the

20  majority of) repairs and improvements made to the subject Property and the subject structures

21  after 2009 lack necessary Building Permits and were thus not constructed to code.

22       57.    Specifically, Defendant Ziegler was deeply involved in the construction of the

23  house and all other improvements, not only while an officer of Tally Ranch, but also while

24  Defendant Ladeda owned the Property, and up to the time when Defendant Ziegler conveyed the

25  Property to Selling Defendant, as Successor Trustee to the Ladeda Trust.  From on or about 2009

26  until Defendant Ziegler sold the Property to Selling Defendant in 2017, as Successor to the

27  Ladeda Trust, she represented herself to others, including the City, as the owner of the Property.

28

FIRST AMENDED COMPLAINT

57271391.v1

58.    Defendant Ziegler and Defendant Ladeda knew, prior to construction, that large portions of the main house and patio were being constructed on an existing 10-foot wide CVWD easement for an irrigation lateral.  However, Defendant Ziegler still proceeded with the construction of the main house.

59.    Additionally, In Addendum One to the Purchase Agreement, Plaintiffs requested, among other things, for Selling Defendants to make the following repairs: Septic Tank to be installed to code; Repair HVAC unit; Install operable lighting in the master bedroom and laundry room; Repair wiring that rodents had chewed; Repair hot and cold water lines at the shower valve for hall bathroom since are were reversed; Repair flue vent at the top of water heater; and Remove flex piping at sink drain lines and install approved drain line piping.

60.    Plaintiffs are informed and believe and thereon allege that Selling Defendant failed to retain corresponding governmental permits and inspections when making Plaintiffs' requested repairs and failed to make repairs in a good and skillful manner.

61.    As a direct and proximate result of the foregoing negligence and careless conduct, actions and/or omissions by said Prior Owner Defendants and Does 1-10 and 21-60, inclusive, Plaintiffs have been harmed and they have suffered damages in an amount presently unknown, but believed to be within this court's jurisdiction.  These damages may include, but are not limited to, the cost to properly repair the Property in order to and bring the Property back to code.  Plaintiffs are presently unaware of the precise amount of damages but will establish the same at trial according to proof.

### THIRD CAUSE OF ACTION

### (For Fraudulent Intentional Misrepresentation Against Defendant Ziegler and Successor Trustee Defendant and Does 26-40, inclusive)

62.    Plaintiffs incorporate by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-45, inclusive.

63.    When Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive, posted the Original MLS Listing, Defendant Ziegler, Successor Trustee Defendant and

- 14 -
FIRST AMENDED COMPLAINT

1 | Does 26-40, inclusive, stated that the Property had been "[r]emodeled and extended and updated

2 | with permits on all!"

3 |      64.    Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive,

4 | advertised the Property to all possible buyers as properly constructed and having the requisite

5 | Building Permits, knowing the information to be false or made the statements recklessly.

6 |      65.    Defendant Ziegler is the Successor Trustee to the Ladeda Trust, and while

7 | Defendant Ziegler was the President of Tally Ranch, Tally Ranch (under the direction of

8 | Defendant Ziegler) made massive repairs and improvements to the Property without any

9 | Building Permits.

10 |      66.    Defendant Ziegler was also deeply involved with improvements to the Property

11 | while Defendant Ladeda owned the Property, and up to the time when Defendant Ziegler

12 | conveyed the Property to Selling Defendant, as Successor Trustee to the Ladeda Trust.

13 | Defendant Ziegler has represented herself to others, including the City, as the owner of the

14 | Property: Defendant Ziegler appeared in front of the City's Planning Commission to discuss her

15 | application for construction of the 5,700 foot addition; multiple construction plans identify

16 | Ziegler as the owner of the Property and/or are titled "Ziegler Residence"; and Defendant Ziegler

17 | identified herself as the owner of the Property in permits to the city.

18 |      67.    Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive, had a

19 | duty to disclose all material facts affecting the value or desirability of the Property which were

20 | known and accessible only to it and Defendant Ziegler, Successor Trustee Defendant and Does

21 | 26-40, inclusive, intentionally or recklessly made the false statements regarding the Property

22 | having all necessary Building Permits.

23 |      68.    Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive,

24 | posted the Original MLS Listing with the intent to defraud and deceive potential buyers,

25 | including Plaintiffs, whom defendants intended or should have foreseen would rely on the

26 | Original MLS Listing. Defendant Ziegler, Successor Trustee Defendant and Does 26-40,

27 | inclusive, posted the Original MLS Listing with the intent to induce buyers, such as Plaintiffs, to

28 | purchase the Property.

- 15 -
FIRST AMENDED COMPLAINT

57271391.v1

69.   Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive, posted the Original MLS Listing, and at the time Plaintiffs bought the Property, Plaintiffs were ignorant of the falsity of the Original MLS Listing and believed it to be true and accurate.  In reliance on Defendant Ziegler's and Successor Trustee Defendant's Original MLS Listing, Plaintiffs were induced to, and did, purchase the Property.  Plaintiffs' reliance on the Original MLS Listing was reasonable and justified in that it had no reason to believe the remodeled and updated structures in the subject Property had been repaired and/or constructed without the necessary Building Permits since the inherent defects could not have been reasonably discovered.

70.   As a direct and proximate result of the conduct of Successor Trustee Defendant and Does 31-40, inclusive, and the facts alleged herein, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be determined by proof at trial.

71.   In engaging in the conduct set forth in detail in Paragraphs 1 through 45 and 62-70 above, Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive,  acted with oppression, fraud, malice, and with conscious disregard of the rights of Plaintiffs, and Plaintiffs are entitled to an award of exemplary damages.  In this regard, Defendant Ziegler and Successor Trustee Defendant intended to injure Plaintiffs or acted in reckless disregard of the Plaintiffs' rights. Plaintiffs are informed and believe that Defendant Ziegler developed this scheme of hiding behind corporate and business entities, and most recently hiding behind her "successor trustee" capacity, in an attempt to immunize herself from liability for her wrongful conduct in concealing the lack of Building Permits for the main house and modifications. Defendant Ziegler has disregarded her responsibilities as an officer of corporations and other business entities and responsibilities as trustee to the Ladeda Trust; and therefore, she may not obtain from the Court the protections otherwise afforded to individuals by corporate ownership or by a trustee capacity.  As a result, Plaintiffs are entitled to exemplary damages.

///

///

///

- 16 -

57271391.v1

**FOURTH CAUSE OF ACTION**

**(For Fraudulent Concealment Against Selling Defendant, Broker Defendants and Does 1-**

**20, inclusive)**

72.     Plaintiffs incorporate by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-45, inclusive.

73.     Broker Defendants represented Selling Defendant in the sale of the Property. Broker Defendant listed the Property for sale in a MLS.

74.     Selling Defendant, Broker Defendants and Does 1-20, inclusive, marketed the Property as having "potential income in excess of $200,000." And in the MLS Listing, Broker Defendants, Selling Defendant and Does 1-20, inclusive, further stated: "Top income producing ultra luxury vacation rental . . . ."

75.     Selling Defendant, Broker Defendants and Does 1-20, inclusive, explicitly informed Plaintiffs on or about September 5, 2017, prior to Plaintiffs signing the Purchase Agreement, that there was vacation rental revenue to be made from weekend event rentals, non-weekend event vacation rentals, including wedding receptions and other events. Specifically, Selling Defendant, Broker Defendants and Does 1-20, inclusive, told Plaintiffs that the vacation rental income for event weekends alone totaled $130,000, and the anticipated vacation rental income for upcoming event weekends totaled $75,000. Selling Defendant, Broker Defendants and Does 1-20, inclusive, further stated that the "summer rates have been $1,300 to $1,500 per night" and that there is vacation rental income to be earned "for non-event weekends."

76.     In fact, neither the permits necessary for legal occupancy, nor permits for short term vacation rentals and events are in place. The Property could not legally produce any income when the Plaintiffs purchased it.

77.     Plaintiffs are informed and believe and thereon allege that Selling Defendant, Broker Defendants and Does 1-20, inclusive, concealed the fact that the property could not legally produce any rental income, because, due to the lack of Building Permits, the main house cannot even be occupied, which of course renders it completely unusable for vacation or other rental income, thereby deceiving Plaintiffs.

- 17 -

57271391.v1

78.    Selling Defendant, Broker Defendants and Does 1-20, inclusive, had a duty to disclose all material facts affecting the value or desirability of the Property which were known and accessible only to them.  And, Plaintiffs are informed and believe and thereon allege, that Selling Defendant, Broker Defendants and Does 1-20, inclusive, concealed the fact that Plaintiffs would not be able to rent the Property as advertised by the Selling Defendant, Broker Defendants and Does 1-20, inclusive.

79.    Plaintiffs were unaware of these undisclosed material facts and reasonably relied on Selling Defendant, Broker Defendants and Does 1-20, inclusive, deception by entering into the Purchase Agreement and closing escrow.  After closing escrow Plaintiffs found out that the main house may not even be legally occupied due to the lack of permits—which renders it completely unusable for vacation or other rental income. .  Up to this date, Plaintiffs are unable to legally occupy the Property.

80.    As a direct and proximate result of the conduct of Selling Defendant, Broker Defendants and Does 1-20, inclusive, and the facts alleged herein, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be determined by proof at trial.

81.    In engaging in the conduct set forth in detail in Paragraphs 1 through 45 and 72-80 above, Selling Defendant, Broker Defendants and Does 1-20, inclusive, acted with oppression, fraud, malice, and with conscious disregard of the rights of Plaintiffs, and Plaintiffs are entitled to an award of exemplary damages.  In this regard, defendants intended to injure Plaintiffs or acted in reckless disregard of the Plaintiffs' rights.  As a result, Plaintiffs are entitled to exemplary damages.

## FIFTH CAUSE OF ACTION

### (For Fraudulent Intentional Misrepresentation and Concealment Against Selling Defendant and Does 1-10, inclusive)

82.    Plaintiffs incorporate by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-45, inclusive.

83.    Plaintiffs are informed and believe and thereon allege that Selling Defendant and Does 1-10, inclusive, intentionally misrepresented and concealed the fact that there were inherent

- 18 -

57271391.v1

1    defects in the design and construction of the structures in the Property, including numerous

2    construction deficiencies due to repairs and/or improvements being performed without requisite

3    Building Permits.

4        84.    Plaintiffs are informed and believe and thereon allege that Selling Defendant and

5    Does 1-10, inclusive, misrepresented that the main house may be occupied, when due to the lack

6    of permits, it is not.

7        85.    Plaintiffs are informed and believe and thereon allege that Selling Defendant and

8    Does 1-10, inclusive, intentionally misrepresented that the Property had a "potential income in

9    excess of $200,000." When in the proper Building Permits for legal occupancy of the main

10   house were not in place, and therefore the Property could not legally produce any income when

11   the Plaintiffs purchased it.

12       86.    Selling Defendant and Does 1-10, inclusive, had a duty to disclose all material

13   facts affecting the value or desirability of the Property which were known and accessible only to

14   them. And, under section 1102 of the California Civil Code, Selling Defendant and Does 1-10,

15   inclusive, had a statutory duty to disclose all additions, structural modifications, or other

16   alterations/repairs that were made to the Property without the necessary Building Permits as

17   required by local, state, and/or the building code, and disclose any easements that may affect the

18   interest in the Property. Selling Defendant and Does 1-10, inclusive, intentionally or recklessly

19   made the false statements that only repairs and improvements in the barn house lacked Building

20   Permits and concealed the fact that all other repairs and improvements to the Property lacked the

21   necessary Building Permits. Further, Plaintiffs are informed and believe and thereon allege that

22   Selling Defendant and Does 1-10, inclusive, knew or should have known that the main house in

23   the Property was substantially encroaching on the CVWD easement and concealed that fact.

24       87.    Selling Defendant's actions, concealments and express and implied

25   representations set forth above were misleading and false and were made with intent to defraud

26   and deceive Plaintiffs whom Selling Defendant and Does 1-10, inclusive, intended or should

27   have foreseen would rely on the statements. The intentional misrepresentations, failures to

28   disclose information, and suppressions of information herein alleged to have been made by

- 19 -

FIRST AMENDED COMPLAINT

57271391.v1

1 | Selling Defendant and Does 1-10, inclusive, were made with the intent to induce Plaintiffs to

2 | purchase the Property.

3 |     88.    Plaintiffs, at the time these failures to disclose and suppressions of facts occurred,

4 | and at the time Plaintiffs closed escrow on the Property, were ignorant of the existence of the

5 | facts that Selling Defendant and Does 1-10, inclusive, and each of them suppressed and failed to

6 | disclose. If Plaintiffs had been aware of the existence of the facts not disclosed by the

7 | defendants, Plaintiffs would not have purchased the Property.

8 |     89.    Plaintiffs reasonably relied on the representation made by Selling Defendant and

9 | Does 1-10, inclusive. In reliance, Plaintiffs were induced to, and did, purchase the Property.

10 | Plaintiffs' reliance was reasonable and justified in that it had no reason to believe the remodeled

11 | and updated structures in the subject Property had been repaired and/or constructed without the

12 | necessary Building Permits since the inherent defects could not have been reasonably

13 | discovered. Further, the permits provided by Selling Defendants led the Plaintiffs to believe that

14 | the Property could produce rental income.

15 |     90.    As a direct and proximate result of the conduct of Selling Defendant and Does 1-

16 | 10, inclusive, and the facts alleged herein, Plaintiffs have suffered damages and will continue to

17 | suffer damages in an amount to be determined by proof at trial.

18 |     91.    In engaging in the conduct set forth in detail in Paragraphs 1 through 45 and 82-

19 | 90 above, Selling Defendant and Does 1-10, inclusive, acted with oppression, fraud, malice, and

20 | with conscious disregard of the rights of Plaintiffs, and Plaintiffs are entitled to an award of

21 | exemplary damages. In this regard, defendants intended to injure Plaintiffs or acted in reckless

22 | disregard of the Plaintiffs' rights. As a result, Plaintiffs are entitled to exemplary damages.

23 | **SIXTH CAUSE OF ACTION**

24 | **(For Negligent Misrepresentation Against Selling Defendant, Broker Defendants and Does**

25 | **1-20, inclusive)**

26 |     92.    Plaintiffs incorporate by this reference, as though fully set forth, each and every

27 | allegation contained in paragraphs 1-45, inclusive.

28 |

57271391.v1

1      93.    Broker Defendants represented Selling Defendant in the sale of the Property.

2   Broker Defendant listed the Property for sale in a MLS.

3      94.    Selling Defendant, Broker Defendants and Does 1-20, inclusive, marketed the

4   Property as having "potential income in excess of $200,000." And in the MLS Listing, Broker

5   Defendants, Selling Defendant and Does 1-20, inclusive, further stated: "Top income producing

6   ultra luxury vacation rental . . . ."

7      95.    Selling Defendant, Broker Defendants and Does 1-20, inclusive, explicitly

8   informed Plaintiffs on or about September 5, 2017, prior to Plaintiffs signing the Purchase

9   Agreement, that there was vacation rental revenue to be made from weekend event rentals, non-

10   weekend event vacation rentals, including wedding receptions and other events. Specifically,

11   Selling Defendant, Broker Defendants and Does 1-20, inclusive, told Plaintiffs that the vacation

12   rental income for event weekends alone totaled $130,000, and the anticipated vacation rental

13   income for upcoming event weekends totaled $75,000. Selling Defendant, Broker Defendants

14   and Does 1-20, inclusive, further stated that the "summer rates have been $1,300 to $1,500 per

15   night," and that there is vacation rental income to be earned "for non-event weekends."

16      96.    During escrow the Selling Defendant and Broker Defendants provided copies of

17   permits for the Property, which included generic descriptions, which lead Plaintiffs to believe

18   that the entire Property was permitted with the exception of the disclosed unpermitted additions

19   and modifications within the barn house listed in the Addendum to the Disclosure Statement.

20      97.    The proper Building Permits for the main house and other improvements in the

21   Property are not in place. As a result, Plaintiffs have been barred by the City from occupying the

22   home, which of course renders it completely unusable for vacation or other rental income. The

23   Property could not legally produce any income when the Plaintiffs purchased it.

24      98.    Plaintiffs are informed and believe and thereon allege that Selling Defendant,

25   Broker Defendants and Does 1-20, inclusive, omitted the relevant fact that the Property lacked

26   Building Permits.

27      99.    Selling Defendant, Broker Defendants and Does 1-20, inclusive, had no

28   reasonable grounds for believing the representations were true when they made them.

- 21 -
FIRST AMENDED COMPLAINT

100.    Plaintiffs were unaware of these undisclosed material facts and reasonably relied on Selling Defendant, Broker Defendants and Does 1-20, inclusive, deception by entering into the Purchase Agreement and closing escrow.  After closing escrow Plaintiffs found out that, they could not rent the Property because it could not legally occupy the home.

101.    As a direct and proximate result of the conduct of Selling Defendant, Broker Defendants and Does 1-20, inclusive, and the facts alleged herein, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be determined by proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment on all causes of action as follows:

1.    On the First Cause of Action for breach of written contract against Selling Defendant and Does 1-10, inclusive,

(a) for damages in an amount according to proof at trial;

(b) for pre- and post-judgment interest as provided by law;

(c) for costs of suit incurred herein; and

(d) for reasonable attorneys' fees pursuant to contract.

2.    On the Second Cause of Action for negligence against Prior Owner Defendants and Does 1-10 and 21-60, inclusive,

(a) for damages in an amount according to proof at trial;

(b) for pre- and post-judgment interest as provided by law.

3.    On the Third Cause of Action for fraudulent intentional misrepresentation against Defendant Ziegler, Successor Trustee Defendant and Does 26-40, inclusive,

(a) for damages in an amount according to proof at trial;

(b) for pre- and post-judgment interest as provided by law; and

(c) for exemplary and punitive damages as proven at trial, pursuant to California Civil Code section 3294.

4.    On the Fourth Cause of Action for fraudulent concealment against Selling Defendant, Broker Defendants and Does 1-20, inclusive,

(a) for damages in an amount according to proof at trial;

- 22 -

57271391.v1

1               (b) for pre- and post-judgment interest as provided by law; and

2               (c) for exemplary and punitive damages as proven at trial, pursuant to

3                      California Civil Code section 3294.

4        5.     On the Fifth Cause of Action for fraudulent intentional misrepresentation and

5  concealment against Selling Defendant and Does 1-10, inclusive,

6               (a) for damages in an amount according to proof at trial;

7               (b) for pre- and post-judgment interest as provided by law; and

8               (c) for exemplary and punitive damages as proven at trial, pursuant to

9                      California Civil Code section 3294.

10       6.     On the Sixth Cause of Action for negligent misrepresentation against Selling

11  Defendant, Broker Defendants and Does 1-20, inclusive,

12               (a) for damages in an amount according to proof at trial;

13               (b) for pre- and post-judgment interest as provided by law.

14       7.     On each cause of action, for such other and further relief as may be reasonable

15  and proper.

16  Dated:  December 11, 2019          NOSSAMAN LLP

17                            JOHN J. FLYNN III
                                GREGORY W. SANDERS

18                            GABRIELA S. PEREZ

19                            By: _____
                                   John J. Flynn III

20

21                            Attorneys for Plaintiffs JAMES SCOTT
                            MORROW, an individual; DANIELLE MORROW,
                            an individual; and MORROW RANCH LA

22                            QUINTA, LLC, a California limited liability
                            company

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
57271391.v1

# EXHIBIT A

DocuSign Envelope ID: 878927A7-E2A8-4330-AF21-BCE97B1B858D



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

**Date Prepared:** _09/10/2017_
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _James Scott Morrow, Danielle Davis Morrow_ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _55075 Monroe St, La Quinta, CA 92253_ , situated in
      _La Quinta_ (City), _Riverside_ (County), California, _92253_ (Zip Code), Assessor's Parcel No. _767-580-048_ ("Property").
   C. **THE PURCHASE PRICE** offered is _Three Million_
      Dollars $ _3,000,000.00_ .
   D. **CLOSE OF ESCROW** shall occur on ☐ _____ (date)(or ☒ _45_ **Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _Desert Pacific Properties_ (Print Firm Name) is the agent of (check one):
      ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Forbes & Associates_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _75,000.00_
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
      within _____ **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) **Days** After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,500,000.00_
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
      the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ ) Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _Seller agrees to cooperate with Buyer's 1031 Exchange at no cost_
      _to Seller. CAR Form BES to be incorporated into the purchase agreement._
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,425,000.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _3,000,000.00_

Buyer's Initials ( _S_ ) ( _DDM_ )          Seller's Initials ( _bd_ ) ( _TE_ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Property Address: **55075 Monroe St., La Quinta, CA  92253**_____ Date: **September 10, 2017**

H.  **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

I.  **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

J.  **LOAN TERMS:**
  **(1) LOAN APPLICATIONS:** Within 3 (or _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
  **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
  **(3) LOAN CONTINGENCY REMOVAL:**
  Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
  **(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
  **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K.  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4.  **SALE OF BUYER'S PROPERTY:**
  A.  This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
  OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5.  **ADDENDA AND ADVISORIES:**
  A.  **ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☒ Other **BES** |

  B.  **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

6.  **OTHER TERMS:** **Seller agrees to sell adjacent parcel APN # 767-580-014 to Buyer and shall close on both the subject property and vacant land parcel concurrently. See attached VLPA (Vacant Land Purchase Agreement) dated 9/10/2017.**

7.  **ALLOCATION OF COSTS**
  A.  **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
  (1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____
  prepared by **Disclosure Source**_____.
  (2) ☐ Buyer ☐ Seller shall pay for the following Report _____
  prepared by _____.
  (3) ☐ Buyer ☐ Seller shall pay for the following Report _____
  prepared by _____.

Buyer's Initials ( ⟦S⟧ )( ⟦DDM⟧ )          Seller's Initials ( ⟦bd⟧ )( ⟦signature⟧ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

  
Property Address: **55075 Monroe St., La Quinta, CA 92253**                                        Date: **September 10, 2017**

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
- (1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
- (2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
  (ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
  (iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
- (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each side to pay own fees.*                                        .
  (b) Escrow Holder shall be *Seller's choice of Services*                                        .
  (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
- (2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E                                        .
  (b) Owner's title policy to be issued by *Seller's choice*                                        .
  (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
- (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee                                        .
- (2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee                                        .
- (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee                                        .
- (4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
- (5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
- (6) Buyer to pay for any HOA certification fee.
- (7) ☐ Buyer ☐ Seller shall pay for any private transfer fee                                        .
- (8) ☐ Buyer ☐ Seller shall pay for                                        .
- (9) ☐ Buyer ☐ Seller shall pay for                                        .
- (10) ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ *1,500.00*                                        , of a standard (or ☒ upgraded) one-year home warranty plan, issued by *Buyer's choice*                                        , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☒ Other: *Buyer's choice of options*                                        Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
- OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
- **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
- **B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
  - (1) All EXISTING fixtures and fittings that are attached to the Property;
  - (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except                                        ; ☒ all refrigerator(s) except                                        ; ☐ all washer(s) and dryer(s), except                                        ;
  - (3) The following additional items:                                        .
  - (4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
  - (5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
  - (6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and                                        , and (ii) are transferred without Seller warranty regardless of value.
- **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii)                                        

                                        . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials ( S ) ( JJM )                                        Seller's Initials ( bd ) ( ___ )

Property Address: **55075 Monroe St., La Quinta, CA  92253**                                          Date: **September 10, 2017**

**9.  CLOSING AND POSSESSION:**
**A.** Buyer intends (or [X] does not intend) to occupy the Property as Buyer's primary residence.
**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ ☐ AM/☐ PM on _____.
**C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
**D. Tenant-occupied property: Property shall be vacant** at least **5 (or ___ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).
**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.
**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Broker section(s), if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
**(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
**(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
**B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.
**C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
**D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
**(1)** SELLER HAS: **7 (or ___ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( S )( WM )                    Seller's Initials ( bd )( TEL )

Property Address: **55075 Monroe St., La Quinta, CA  92253** _____ Date: **September 10, 2017**

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( S ) ( DDM )    Seller's Initials ( bd ) ( ____ )

RPA-CA REVISED 12/15 (PAGE 5 OF 10)

DocuSign Envelope ID: 878927A7-E2A8-4330-AF21-BCE97FDB565D

Property Address: **55075 Monroe St., La Quinta, CA  92253**_____ Date: **September 10, 2017**

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( S ) ( WM )                        Seller's Initials ( bd ) ( 7BL )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

DocuSign Envelope ID: 878927A7-E2A8-4330-AF21-BCE97E0B858D

Property Address: **55075 Monroe St., La Quinta, CA 92253**_____ Date: **September 10, 2017**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ☐ ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity identified and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the **joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( S )( DDM )
**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

Seller's Initials ( bd )( ✔️ )

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT **(RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    55075 Monroe, La

Property Address: **55075 Monroe St., La Quinta, CA  92253** _____ Date: **September 10, 2017**

    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

    **A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

    **B.** **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. **AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

        Buyer's Initials _____ / _____        Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

    **A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

    **B.** **ARBITRATION OF DISPUTES:**

    The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

        **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

        **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

        Buyer's Initials _____ / _____        Seller's Initials _____ / _____

    **C.** **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

        **(1) EXCLUSIONS:** The following matters are excluded from mediation and arbitration: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; and **(iii)** any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _____ ) ( _____ )        Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)

DocuSign Envelope ID: 878927A7-E2A8-4330-AF21-BCE97EAB66B8

Property Address: **55075 Monroe St., La Quinta, CA 92253**                                    Date: **September 10, 2017**

      (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

      (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**    Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

  **A.** "**Acceptance**" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

  **B.** "**Agreement**" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

  **C.** "**C.A.R. Form**" means the most current version of the specific form referenced or another comparable form agreed to by the parties.

  **D.** "**Close Of Escrow**", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

  **E.** "**Copy**" means copy by any means including photocopy, NCR, facsimile and electronic.

  **F.** "**Days**" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

  **G.** "**Days After**" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

  **H.** "**Days Prior**" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

  **I.** "**Deliver**", "**Delivered**" or "**Delivery**", unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

  **J.** "**Electronic Copy**" or "**Electronic Signature**" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

  **K.** "**Law**" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

  **L.** "**Repairs**" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

  **M.** "**Signed**" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ ,
who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ ] _____ [ ] AM/ [ ] PM,
on _____ (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **09/10/2017**    BUYER   *James Scott Morrow*
(Print name) **James Scott Morrow**    727DC90E782eb16...
Date **09/10/2017**    BUYER   *Danielle V. Morrow*
(Print name) **Danielle Davis Morrow**B83C5407DF494A9...

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( *bd* ) ( *TEX* )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

DocuSign Envelope ID: 878927A7-E2A8-4330-AF21-BCE97EFA866D

Property Address: **55075 Monroe St., La Quinta, CA  92253**                                    Date: **September 10, 2017**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[X] (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
**September 11, 2017**          .

[X] One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **09/11/2017**      SELLER _Brent Dill_
(Print name) **The Dill Family 2015 Trust**
Date _____      SELLER _____
(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
[ ] AM/ [ ] PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **Forbes & Associates**                                         CalBRE Lic. # **01991227**
By _Ryan Hall_                        **Ryan A Hall** CalBRE Lic. # **01515531**        Date **09/10/2017**
By _____                        CalBRE Lic. # _____        Date _____
Address **P.O. Box 12313**                        City **Costa Mesa**        State **CA**    Zip **92627**
Telephone **(949)903-2132**        Fax **(949)335-6651**        E-mail **ryanhallsc@gmail.com**
Real Estate Broker (Listing Firm) **Desert Pacific Properties**                                 CalBRE Lic. # _____
By _____                        **Susan Harvey** CalBRE Lic. # **00957590**        Date **09/11/2017**
By _Susan Harvey_                        CalBRE Lic. # _____        Date _____
Address _____                        City _____        State _____ Zip _____
Telephone **(760)250-8992**        Fax _____        E-mail **susan@dppllc.com**

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, [ ] a deposit in the amount of $ _____ ),
counter offer numbers _____ [ ] Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____                                         Escrow # _____
By _____                                         Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
[ ] Department of Business Oversight, [ ] Department of Insurance, [ ] Bureau of Real Estate.

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                    Broker or Designee Initials

**REJECTION OF OFFER:** ( ____ )( ____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:            Buyer Acknowledges that page 10 is part of this Agreement ( _S_ )( _DDM_ )
REAL ESTATE BUSINESS SERVICES, INC.                                         Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/15 (PAGE 10 OF 10)**        Reviewed by _____
                                Broker or Designee



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        55075 Monroe, La

DocuSign Envelope ID: BA510E6E-220D-4D75-9F0C-6DFE269A404D
DocuSign Envelope ID: 71CCAEC9-4522-4D78-AE55-FCE0A6D22A8A



**CALIFORNIA ASSOCIATION OF REALTORS®**

## ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

No. _ONE_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _RR (Request for Repairs)_
dated _September 10, 2017_ , on property known as 55075 Monroe St,
La Quinta, 92253

| In which | _James Scott Morrow , Danielle Davis Morrow_ | is referred to as ("Buyer/Tenant") |
| and | _Dill Family 2015 Trust_ | is referred to as ("Seller/Landlord"). |

_1. Close of Escrow shall be amended to 12/15/2017. The close of escrow on 55075 Monroe (APN 767-580-048) and the 4.36 acres Monroe (APN 767-580-014) must be simultaneous closing and one shall not close without the other._
_2. Subject property to be conveyed in the same or better condition as it was at the time of offer/acceptance. Any damage to the property caused by Seller and/or renters during the escrow period to be repaired prior to close of escrow at Seller's expense._
_3. Seller agrees that there will be no rentals of the subject property after 12/11/2017 so that Buyer can complete the final walk-thru as per Paragraph 15 of the RPA-CA._
_4. Paragraph 7A. CAR Form SWPI RE: Septic Tank to be incorporated into the Residential Purchase Agreement._
_5. Buyers responsibility for RPA 7. B. (2) (i) and (ii)._
_6. Seller is not aware of the compliance or non-compliance of the plumbing on the property. It shall be the Buyers sole responsibility to determine the suitability of the plumbing for Buyers intended use._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _September 27, 2017_

Buyer/Tenant _James Scott Morrow_
James Scott Morrow

Buyer/Tenant _Danielle D. Morrow_
Danielle Davis Morrow

Date 10/11/2017

Seller/Landlord _Brent Dill_
Dill Family 2015 Trust

Seller/Landlord _Eileen Dill_

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Forbes & Associates, 34197 Pacific Coast Highway #103 Dana Point, CA 92629    Phone: 949.903.2132    Fax: 949.209.3848    55075 Monroe St
Ryan Hall    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. *Two (2)*

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,

dated ___*September 10, 2017*___ , on property known as ___*55075 Monroe St.*___

*La Quinta, CA 92253*

in which ___*James Scott Morrow, Danielle Davis Morrow*___ is referred to as ("Buyer/Tenant")

and ___*The Dill Family 2015 Trust*___ is referred to as ("Seller/Landlord").

*Seller to credit Buyer $1,500 for closing costs in lieu of Home Warranty.*

*Buyer waives the purchase of a Home Warranty plan.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date   10/20/2017                                Date   10/26/2017

Buyer/Tenant   *James Scott Morrow*            Seller/Landlord   Brent Dill
James Scott Morrow                                               *The Dill Family 2015 Trust*

Buyer/Tenant   *Danielle D. Morrow*           Seller/Landlord   Eileen Dill
Danielle Davis Morrow                                           0E5E150A6D9C4E6...

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

# EXHIBIT B

**55075 Monroe Street St, La Quinta 92253**   STATUS: **Closed**

LIST/CLOSE:
**$3,000,000/$3,000,000**

BED / BATH: **6/6,0,0,0**
SQFT(src):
PRICE PER SQFT:
LOT(src): **182,516/4.19 (SEE)**
LEVELS:
GARAGE: **12**
YEAR BUILT(src): **2006**
PROP SUB TYPE: **SFR**
DOM / CDOM: **43/43**
SLC: **Standard**
PARCEL #: **767580048**
LISTING ID: **217019680DA**

| DESCRIPTION |
|---|

Top income producing ultra luxury vacation rental in La Quinta, California, one of the hottest short term rental markets in the United States. Incredible ranch estate of 4,100 sf 4 bed/4 bath home and 6,000 sf, 2 bed/2.5 bath barn with full kitchen (sleeps 8+) on 4.19 acres. Attached game room and rooftop deck, pool house with outdoor kitchen, fireplace and fire pit. 12-car garage & RV parking. Eight pastures, arena with judge's stand and private bride path. Adjacent to PGA West's Greg Norman Course & Griffin Ranch. In the immediate vicinity of many high-end country clubs, such as The Hideaway, Madison Club & The Palms. Adjacent 4.36 acre parcel with approved tentative map for 10 lots also available.

EXCLUSIONS:                                              INCLUSIONS:

AREA: **313 - La Quinta South of HWY 111**
SUBDIVISION: **Not Applicable-313/Not Applicable-313**
COUNTY: **Riverside**
SENIOR COMMUNITY?:
CERTIFIED 433A?:
MAIN LEVEL BEDROOMS:
MAIN LEVEL BATHROOMS:

LIST $ ORIGINAL: **$3,000,000**
BASEMENT SQFT:
COMMON WALLS:
PARKING:
HORSE:

ROOM TYPE:
EATING AREA:

COOLING:
HEATING:
VIEW: **Mountain**
WATERFRONT:
LAUNDRY:

| INTERIOR |
|---|

INTERIOR:
ACCESSIBILITY:
KITCHEN FEATURES:

APPLIANCES:
FLOORING: **See Remarks**
BATHROOM FEATURES:

ENTRY LOC/ENTRY LVL: **/**
FIREPLACE: **See Remarks**

| EXTERIOR |
|---|

EXTERIOR:
FENCING:
DIRECTION FACES:

SECURITY:
SEWER: **Sewer On Bond**

LOT:
POOL: **In Ground, See Remarks**

PATIO/PORCH:
SPA: **In Ground, Private**

| BUILDING |
|---|

BUILDER NAME:
MAKE:
BUILD MODEL:
TAX MODEL:

ARCH STYLE:
DOOR:
WINDOW:

ROOF:
FOUNDATION DTLS: **See Remarks**
PROP COND:

CONSTR MTLS:
OTHER STRUCT:
NEW CONSTRUCTION YN:

| GARAGE AND PARKING |
|---|

ATTACHED GARAGE?:
UNCOVERED SPACES:

PARKING TOTAL: **12**
# REMOTES: **0**

GARAGE SPACES: **12**
RV PARK DIM:

CARPORT SPACES: **0**

| GREEN |
|---|

GREEN BLDG VERIFICATION TYPE:
GREEN ENERGY GEN:
WALK SCORE: **0**

GREEN VERIFICATION BODY:
GREEN ENERGY EFF:

GREEN VERIFICATION YR:
GREEN SUSTAIN:

GREEN VERI. RATING:
GREEN WTR CONSERV:

| POWER PRODUCTION |
|---|

POWER PROD TYPE:
POWER PROD ANNUAL STATUS:

POWER PROD SIZE:

POWER PROD YR INSTALL:

POWER PROD ANNUAL:

| COMMUNITY |

HOA FEE: **$0**
HOA FEE 2: **$0**
COMMUNITY:

HOA NAME:
HOA NAME 2:
HOA AMENITIES: **Other**

HOA PHONE:
HOA PHONE 2:

# OF UNITS: **0**
# UNITS IN COMMUNITY:
STORIES TOTAL:

| LAND |

LAND LEASE?: **No**
COMMON INTEREST:
LAND LEASE AMOUNT: **$0.00**
LAND LEASE AMT FREQ:

LAND LEASE PURCH?:
LAND LEASE RENEW:
PARCEL #: **767580048**
ADDITIONAL APN(s): **No**

UTILITIES:
ELECTRIC:
WATER SOURCE:
LOT SIZE DIM:
ASSESSMENTS: **Unknown**

TAX LOT:
TAX BLOCK:
TAX TRACT #:
ZONING: **RL (Low Density Reside..**

| SCHOOL |

HIGH SCHOOL DISTRICT:
.

ELEMENTARY:
ELEMENTARY OTHER:

MIDDLE/JR HIGH:
MIDDLE/JR HIGH OTHER:

HIGH SCHOOL:
HIGH SCHOOL OTHER:

| LISTING |                                                    | DATES |

BAC: **2**
BAC RMRKS:
DUAL/VARI COMP?: **No**
LEASE CONSIDERED?: **No**
CURRENT FINANCING:
POSSESSION: **Close Of Escrow**
SIGN ON PROPERTY?:

CONTINGENCY:
PRIVATE REMARKS:

TERMS: **Cash**
LIST AGRMT: **Exclusive Right To Sell**
LIST SERVICE: **Full Service**
AD NUMBER:
DISCLOSURES:
INTERNET, AVM?/COMM?: **Yes/Yes**
INTERNET?/ADDRESS?: **Yes/Yes**

LIST CONTRACT DATE: **07/31/17**
ON MARKET DATE: **07/31/17**
PRICE CHG TIMESTAMP: **07/31/17**
STATUS CHG TIMESTAMP: **12/17/17**
MOD TIMESTAMP: **12/18/17**
EXPIRED DATE:
PURCH CONTRACT DATE: **09/12/17**
CLOSE DATE: **12/15/17**

| SHOWING INFORMATION |

SHOW CONTACT TYPE:
SHOW CONTACT NAME:
SHOW CONTACT PH:
SHOW INSTRUCTIONS:
DIRECTIONS:

LOCK BOX LOCATION: **No Key Safe**
LOCK BOX TYPE: **None**
📵

OCCUPANT TYPE:
OWNER'S NAME:

| AGENT / OFFICE |                                           | CONTACT PRIORITY |

LA:  **(CDAR-D22668) Susan Harvey**
CoLA:
LO:  **(CDAR-D8295) Desert Pacific Properties**
LO PHONE: **760-360-8200**
CoLO:
CoLO PHONE:

LA State License:  **00957590**
CoLA State License:
LO State License:
LO FAX:  **760-360-7580**
CoLO State License:
CoLO FAX:

| COMPARABLE INFORMATION |

CLOSE PRICE: **$3,000,000**
LIST PRICE: **$3,000,000**
LIST $ ORIGINAL: **$3,000,000**
PURCH CONTRACT DATE: **09/12/17**
DOM/CDOM:  **43/43**

BA: **(CDAR-D22668) Susan Harvey**
BO: **Desert Pacific Properties**
BA State License:  **00957590**
BO State License:

CoBA: **(SHALLRYA) Ryan Hall**
CoBO: **Forbes & Associates**
CoBA State License:  **01515531**
CoBO State License:

BUYER FINANCING: **Other**
CONCESSIONS $: **$0**
CONCESSION CMTS:
COE DATE: **12/15/17**

AGENT FULL: Residential   LISTING ID:  217019680DA

Printed by Ryan Hall, State Lic: 01515531 on 02/14/2019 12:54:52 PM

©CRMLS. Information is believed to be accurate, but shall not be relied upon without verification.
Accuracy of square footage, lot size and other information is not guaranteed.

# EXHIBIT C

**55075 Monroe St, La Quinta 92253**     STATUS: **Canceled**     LIST PRICE: **$2,700,000**

BED / BATH: **4/4,0,1,0**
SQFT(src): **4,100 (O)**
PRICE PER SQFT: **$658.54**
LOT(src): **182,516/4.19 (SEE)**
LEVELS: **One**
GARAGE: **12/Detached**
YEAR BUILT(src): **2006 (SLR)**
PROP SUB TYPE: **SFR**
DOM / CDOM: **124/124**
SLC: **Standard**
PARCEL #: **767058013**
LISTING ID:
**216027934DA**

## DESCRIPTION

**Sellers want out! BRING OFFERS! The Tuscan ranch style home offers 4 bedrooms/4 baths, plus an attached game room and rooftop deck, with expansive unobstructed mountain views. The 12-car garage, which can possibly be converted into 2 additional bedrooms, has epoxy floors, TV, A/C & Heat plus Stereo! This manicured 4 acre property, includes RV parking, a pool house with outdoor kitchen, fireplace and large fire pit; three raised vegetable gardens, eight pastures, an arena w/ judges' stand, and a private bridle path. The 6,000 sf. Barn has a riders lounge, grooms' quarters, office & bathrooms, all under a 26 ft. tall wood beam ceiling with beautiful Chandeliers. Our Luxury Lease Mgmt. Co. states an approx. 6-7% CAP based on list price. The Contiguous 4 acre parcel is available, but not included in List Price. Come visit this remarkable property that is priced to sell this season! Appointment only.**

EXCLUSIONS: **Furniture, Art work**                INCLUSIONS:

AREA: **313 - La Quinta South of HWY 111**
SUBDIVISION: **Not Applicable-313/Not Applicable-313**
COUNTY: **Riverside**
SENIOR COMMUNITY?:
CERTIFIED 433A?:
MAIN LEVEL BEDROOMS:
MAIN LEVEL BATHROOMS:

LIST $ ORIGINAL: **$3,200,000**
BASEMENT SQFT:
COMMON WALLS:
PARKING: **Boat, Side by Side, Guest**
HORSE: **Yes**

ROOM TYPE: **Great Room, Walk-In Closet, Utility Room, Master Suite, Retreat**
EATING AREA: **In Kitchen, Breakfast Counter / Bar**

COOLING: **Central, Zoned**
HEATING: **Forced Air**
VIEW: **Mountain, Pool, Panoramic**
WATERFRONT:
LAUNDRY: **Dryer Included, Washer Included, Individual Room**

## INTERIOR

INTERIOR: **Wet Bar, Wired for Data, Storage Space, Beamed Ceilings, Bar, Granite Counters, Crown Moldings, Recessed Lighting, Wired for Sound**
ACCESSIBILITY:
KITCHEN FEATURES:

APPLIANCES: **Garbage Disposal, Water Heater Central, Refrigerator, Dishwasher**
FLOORING: **Carpet, Stone**
BATHROOM FEATURES:

ENTRY LOC/ENTRY LVL: **/**
FIREPLACE: **Guest House, Fire Pit, Raised Hearth, See Remarks, Great Room, Propane, Master Retreat**

## EXTERIOR

EXTERIOR: **Corral, Barbecue Private**
FENCING: **Stucco Wall, Vinyl**
DIRECTION FACES:

SECURITY: **Wired for Alarm System, Security Lights, Security System, Automatic Gate**
SEWER: **Conventional Septic**

LOT: **Horse Property, Sprinkler System, Ranch**
POOL: **Pebble, In Ground, Heated with Gas**

PATIO/PORCH: **Stone, Wrap Around, Porch - Rear, Roof Top, Covered**
SPA: **In Ground, Private**

## BUILDING

BUILDER NAME: **Custom**
MAKE:
BUILD MODEL:
TAX MODEL:

ARCH STYLE: **Ranch, Custom Built**
DOOR: **Sliding Glass Door(s)**
WINDOW: **Wood Frame Windows**

ROOF: **Spanish Tile**
FOUNDATION DTLS:
PROP COND:

CONSTR MTLS: **Stone, Stucco**
OTHER STRUCT: **Barn(s)**
NEW CONSTRUCTION YN:

## GARAGE AND PARKING

ATTACHED GARAGE?: **Detached**   PARKING TOTAL: **12**      GARAGE SPACES: **12**      CARPORT SPACES: **0**

UNCOVERED SPACES:              # REMOTES: 0            RV PARK DIM:

**GREEN**

GREEN BLDG VERIFICATION TYPE: GREEN VERIFICATION BODY:   GREEN VERIFICATION YR:    GREEN VERI. RATING:
GREEN ENERGY GEN:             GREEN ENERGY EFF:          GREEN SUSTAIN:            GREEN WTR CONSERV:
WALK SCORE: 0

**POWER PRODUCTION**

POWER PROD TYPE:               POWER PROD SIZE:          POWER PROD YR INSTALL:    POWER PROD ANNUAL:
POWER PROD ANNUAL STATUS:

**COMMUNITY**

HOA FEE: $0                    HOA NAME:                 HOA PHONE:                # OF UNITS: 0
HOA FEE 2: $0                  HOA NAME 2:               HOA PHONE 2:              # UNITS IN COMMUNITY:
COMMUNITY:                     HOA AMENITIES:                                      STORIES TOTAL:

**LAND**

LAND LEASE?: No                LAND LEASE PURCH?:        UTILITIES: Cable Available    TAX LOT:
COMMON INTEREST:               LAND LEASE RENEW:         ELECTRIC:                 TAX BLOCK:
LAND LEASE AMOUNT: $0.00       PARCEL #: 767058013       WATER SOURCE: Public, Well   TAX TRACT #:
LAND LEASE AMT FREQ:           ADDITIONAL APN(s): No     LOT SIZE DIM:             ZONING: A120
                                                         ASSESSMENTS:

**SCHOOL**

HIGH SCHOOL DISTRICT:          ELEMENTARY:               MIDDLE/JR HIGH:           HIGH SCHOOL:
                               ELEMENTARY OTHER:         MIDDLE/JR HIGH OTHER:     HIGH SCHOOL OTHER:

**LISTING**                                                        **DATES**

BAC: 2.5                       TERMS: Conventional, Cash, Cash to New   LIST CONTRACT DATE: 10/01/16
BAC RMRKS:                     Loan, Owner Will Carry    ON MARKET DATE: 10/01/16
DUAL/VARI COMP?: No            LIST AGRMT: Exclusive Right To Sell   PRICE CHG TIMESTAMP: 01/24/17
LEASE CONSIDERED?: No          LIST SERVICE: Full Service   STATUS CHG TIMESTAMP: 02/02/17
CURRENT FINANCING:             AD NUMBER:                MOD TIMESTAMP: 02/02/17
POSSESSION: Close Of Escrow    DISCLOSURES:              EXPIRED DATE:
SIGN ON PROPERTY?: No          INTERNET, AVM?/COMM?:  Yes/Yes   PURCH CONTRACT DATE:
                               INTERNET?/ADDRESS?:  Yes/Yes   ENDING DATE: 02/02/17

CONTINGENCY:
PRIVATE REMARKS: Seller will look at ALL offers! Full time owner, so please call me, (760) 285-3578, first with plenty of lead
time. Animals to put up. Amenities List attached. Be sure to take the Virtual Tour to really SEE this estate. Co. tax records state
Mobile. Remodeled and extended and upgraded with permits on all!! SELLER FINANCING AVAILABLE!!

**SHOWING INFORMATION**

SHOW CONTACT TYPE:             LOCK BOX LOCATION: No Key Safe        OCCUPANT TYPE: Owner
SHOW CONTACT NAME:             LOCK BOX TYPE: None       OWNER'S NAME:
SHOW CONTACT PH: 760-285-3578
SHOW INSTRUCTIONS: Call Kim at 760-285-3578. Need plenty of lead time!
DIRECTIONS:

**AGENT / OFFICE**                                                 **CONTACT PRIORITY**

LA: (CDAR-D73165) Kim Kelly    LA State License: 01329387   1.LA HOME: 760-285-3578
CoLA:                          CoLA State License:
LO: (CDAR-D21798) HK Lane [ Christie's   LO State License: 01873231
Int'l                          LO FAX:  760-541-4899
LO PHONE: 760-541-4800         CoLO State License:
CoLO:                          CoLO FAX:
CoLO PHONE:

**COMPARABLE INFORMATION**

CLOSE PRICE:                   BA: ()                    CoBA: ()                  BUYER FINANCING:
LIST PRICE: $2,700,000         BO:                       CoBO:                     CONCESSIONS $: $0
LIST $ ORIGINAL:               BA State License:         CoBA State License:       CONCESSION CMTS:
PURCH CONTRACT DATE:           BO State License:         CoBO State License:       END DATE: 02/02/17
DOM/CDOM: 124/124

AGENT FULL: Residential   LISTING ID:  216027934DA      Printed by Ryan Hall, State Lic: 01515531 on 02/14/2019 12:53:42 PM

©CRMLS. Information is believed to be accurate, but shall not be relied upon without verification.
Accuracy of square footage, lot size and other information is not guaranteed.

# EXHIBIT D

MINUTES
PLANNING COMMISSION MEETING

A regular meeting held at the La Quinta City Hall
78-495 Calle Tampico, La Quinta, CA

September 25, 2007                                                7:00 P.M.

I.    CALL TO ORDER

    A.    This meeting of the Planning Commission was called to order at 7:00 p.m. by Chairman Alderson who asked Commissioner Quill to lead the flag salute.

    B.    Present: Commissioners Katie Barrows, Jim Engle, Paul Quill, and Chairman Ed Alderson.

    C.    Staff present: Assistant City Manager Doug Evans, Planning Director Les Johnson, Assistant City Attorney Michael Houston, Principal Planner Andrew Mogensen, Assistant Planner Eric Ceja, and Executive Secretary Betty Sawyer.

II.   PUBLIC COMMENT: None.

III.  CONFIRMATION OF THE AGENDA:

    A.    Staff requested the Agenda be amended to note that Public Hearing Item B would be considered and not continued. The Agenda was confirmed with the change.

IV.   CONSENT ITEMS:

    A.    Chairman Alderson asked if there were any changes to the Minutes of September 11, 2007. There being no changes, it was moved and seconded by Commissioners Quill/Barrows to approve the minutes as submitted. Unanimously approved.

V.    PUBLIC HEARINGS:

    A.    Village Use Permit 2006-035; a request of Dan Cline, Forward Architecture and Design, Inc., for consideration of architecture and landscaping plans for three retail commercial buildings located on 3.39 acres at the northeast corner of Calle Tampico and Desert Club Drive.

Planning Commission Minutes
September 25, 2007

1.  Chairman Alderson opened the public hearing and asked for the staff report. Principal Planner Andrew Mogensen informed the Commission the applicant had requested a continuance to the next meeting.

2.  There being no discussion, it was moved and seconded by Commissioners Barrows/Engle to continue Village Use Permit 2006-035 to October 9, 2006, as requested. Unanimously approved

B.  Site Development Permit 2007-893; a request of Mark Ladeda for consideration of architectural and landscaping plans for an approximately 5,700 square foot stable/barn structure located at the Tally Ranch, a 4.19-acre private residential equestrian property located at 55-075 Monroe Street.

1.  Chairman Alderson opened the public hearing and asked for the staff report. Assistant Planner Eric Ceja presented the information contained in the staff report, a copy of which is on file in the Planning Department.

2.  There being no questions of the staff, Chairman Alderson asked if the applicant would like to address the Commission. Ms. Paula Ziegler, the applicant, stated she was available to answer any questions.

3.  Commissioner Engle asked if the colors on the elevation were true. Ms. Ziegler stated it would be more of a terra cotta color.

4.  Commissioner Barrows asked if the windows were energy efficient. Ms. Ziegler stated there was a 12-foot trellis that runs along the entire length of the building on the south elevation,

5.  Chairman Alderson asked about ventilation or air conditioning. Mr. Ladeda, representing the applicant, stated there were openings in the roof as well as doors on either end of the building for ventilation as well as the stall barn doors.

6.  Commissioner Quill asked if the tack room/feed room would ever be converted to a casita. The applicant stated no. Commissioner Quill asked if it was ever intended to be a commercial use. Ms. Ziegler stated no.

Planning Commission Minutes
September 25, 2007

    7.    There was no further public comment, the public hearing was closed and open for Commission discussion.

    8.    There being no discussion, it was moved and seconded by Commissioners Barrows/Engle to adopt Planning Commission Resolution 2007-040 approving Site Development Permit 2007-893 as recommended.

ROLL CALL: AYES: Commissioners Barrows, Engle, Quill, and Chairman Alderson. NOES: None. ABSTAIN: None. ABSENT: None.

C.    Tentative Tract Map 32848, Amendment No. 1; a request of Sarkis and Sevak Khatchadourian for consideration of a request to amend the tract map from 16 lots to 15 lots for the property located on the north side of Avenue 60 approximately 700 feet west of Madison Street.

    1.    Chairman Alderson opened the public hearing and asked for the staff report. Principal Planner Andrew Mogensen presented the information contained in the staff report, a copy of which is on file in the Planning Department

    2.    Chairman Alderson asked if there were any questions of staff. Commissioner Quill asked if the City required the changes in order for them to obtain their time extension. Staff stated the extension is to allow the applicant time to obtain the final map. The Amendment was in regard to provisions for the retention basin.

    3.    Chairman Alderson asked staff to explain how the retention basin would drain. Staff explained the drainage on the site plan. Chairman Alderson asked if the tract map to the east had their house plans sited on their tract. His concern is whether there were any two story units abutting one story houses. Staff stated they had not submitted any site development permit for the house units.

    4.    There being no further questions of the staff, Chairman Alderson asked if the applicant would like to address the Commission. Mr. Sarkis Khatchadourian gave a presentation on the project.

    5.    Commissioner Quill asked if the neighboring property owner had been contacted in regard to the project. Mr. Khatchadourian

3

Planning Commission Minutes
September 25, 2007

stated they had spoken to him.

6.      Commissioner Barrows asked that the Palo Verde tree proposed be substituted with the native Palo Verde tree.

7.      There being no further questions of the applicant, Chairman Alderson asked if there was any other public comment.  There being no public comment, the public hearing was closed and open for Commission discussion.

8.      There being no further discussion, it was moved and seconded by Commissioners Barrows/Quill to adopt Planning Commission Resolution 2007-041 recommending approval of Tentative Tract Map 32848, Amendment No. 1, as recommended.

ROLL CALL: AYES: Commissioners Barrows, Engle, Quill, and Chairman Alderson.  NOES:  None.  ABSTAIN:  None.  ABSENT: None.

Chairman Alderson recessed the meeting at 7:28 p.m. and reconvened at 7:34 p.m.

BUSINESS ITEMS:

A.      SilverRock Resort Clubhouse; a request of the City of La Quinta Redevelopment Agency for consideration of concept drawings for the SilverRock Resort Clubhouse located on the southwest corner of Jefferson Street and Avenue 54.

1.      Chairman Alderson asked for the staff report.  Assistant City Manager Doug Evans presented the information contained in the staff report, a copy of which is on file in the Planning Department. Staff introduced Mr. Robert Altevers, architect for the project, who gave a presentation on the SilverRock Resort Clubhouse design.

2.      Chairman Alderson asked if this Clubhouse design would require the rerouting of any of the existing tees.  Staff stated no.  This is a conceptual plan and the lake is being evaluated from a budget perspective as well as water efficiency.   Staff is having negotiations with CVWD in regard to the proposed plan.  Staff knows what the limitations of turf will be and the design team believes they can meet the new requirements of the CVWD

4

Planning Commission Minutes
September 25, 2007

Landscape Ordinance. In regard to the lake, staff is still reviewing the possibilities to ensure the City's balance on the water criteria as well as the aesthetics. It will have less water than originally planned.

3.  Commissioner Quill questioned the visibility of the pro-shop and starter points. Staff stated they has been considered and added into the design. Commissioner Quill stated his only concern is the new water efficiency requirements and the water features being proposed. Assistant City Manager Doug Evans stated HAS, the landscape architects, was selected as the landscape architect because one of the first issues they bought up was the water features in the design. The design team is optimistic they can meet the objectives.

4.  Commissioner Barrows stated that when there are events taking place the pro-shop appears to be set off from the event area. Mr. Altever reviewed the site plan and explained it would visible from the event area. As a note, the pro-shop would be closed during most evening events. Commissioner Barrows asked about the energy and water efficiency elements that are being proposed and suggested they be part of the marketing. Mr. Altevers explained some of the marketing plans. Discussion followed regarding the different levels of LEED certification and potential certification level the project could reach. Commissioner Barrows noted her concern regarding the amount of water proposed for the project.

5.  Chairman Alderson questioned how the space in the Clubhouse is being allocated in respect to the banquet facility and the other areas. Is it economically feasible to dedicate this much space to a banquet area. Mr. Altevers explained the flexibility of the floor area is to accommodate different party sizes. He cannot speak to the revenues, but does know that banquets are a large revenue operation. Discussion followed regarding banquet operations. Chairman Alderson asked if the lake would be canal water and questioned the depth that would be needed for the affect desired. Staff explained there were several options available to the design team and they were evaluating all of them.

6.  There being no further questions of the staff, Chairman Alderson asked if there was any other public comment. There being no public comment, the public participation portion was closed and open for Commission discussion.

5

Planning Commission Minutes
September 25, 2007

    7.      There being no further discussion, it was moved and seconded by
Commissioners Barrows/Quill to adopt Minute Motion 2007-016
recommending approval of the concept drawings for the
SilverRock Resort Clubhouse with an encouragement for water
and energy efficiency efforts. Unanimously approved.

B.    Site Development Permit 2007-857; a request of Coachella Valley
Housing Coalition for consideration of landscaping plans for the Dune
Palms Neighborhood Apartments and Community Center located at the
northwest corner of Dune Palms Road and Avenue 48.

    1.      Chairman Alderson asked for the staff report. Planning Director
Les Johnson presented the information contained in the staff
report, a copy of which is on file in the Planning Department.

    2.      Chairman Alderson asked how these plans relate to the new
CVWD Landscape Ordinance. Staff stated the landscape
architect is aware of the requirements and the project will be
required to meet those requirements.

    3.      There being no further questions of the staff, Chairman Alderson
asked if the applicant would like to address the Commission. Mr.
Brian Peulicke gave a presentation on the project.

    4.      There being no questions of the applicant, Chairman Alderson
asked if there was any other public comment. There being no
public comment, the public participation portion was closed and
open for Commission discussion.

    5.      There being no further discussion, it was moved and seconded by
Commissioners Barrows/Engle to adopt Minute Motion 2007-017
recommending approval of landscaping plans for Site
Development Permit 2007-857, as recommended. Unanimously
approved.

CORRESPONDENCE AND WRITTEN MATERIAL: None.

COMMISSIONER ITEMS:

A.    Commissioner Engle informed the Commission about the Top of the Cove
Cleanup Day on October 13, 2007.

Planning Commission Minutes
September 25, 2007

        B.      Chairman Alderson asked about the replacement of Commissioner Daniels. Staff explained it was under Council consideration at this time.

        C.      Staff informed the Commission of the joint meeting with the City Council and Architecture and Landscape Review Committee to be held on October 23, 2007. Staff will be working on agenda topics and would appreciate any suggestions from the Commission.

        C.      Staff gave a review of the City Council meeting of September 18, 2007.

ADJOURNMENT:

There being no further business, it was moved and seconded by Commissioners Quill/Barrows to adjourn this regular meeting of the Planning Commission to a regular meeting to be held on October 9, 2007. This regular meeting was adjourned at 8:44 p.m. on September 25, 2007.

Respectfully submitted,


Betty Sawyer, Executive Secretary
City of La Quinta, California

7

# EXHIBIT E



# EXHIBIT F



# EXHIBIT G

78-495 CALLE TAMPICO
LA QUINTA, CALIFORNIA 92253

*City of La Quinta*

COMMUNITY DEVELOPMENT DEPARTMENT
BUILDING PERMIT

VOICE (760) 777-7125
FAX (760) 777-7011
INSPECTIONS (760) 777-7153

Date:    10/19/2015

| | |
|---|---|
| Application Number: | BELC2015-0096 |
| Property Address: | 55075 MONROE ST ST |
| APN: | 767580013 |
| Application Description: | ZIEGLER LADEDA / INSTALL ELECTRICAL PANEL |
| Property Zoning: | |
| Application Valuation: | $2,000.00 |

Owner:
MARK LADEDA
55075 MONROE ST
LA QUINTA, CA 92253

Applicant:
PAULA ZIEGLER LADEDA
55075 MONROE
LA QUINTA, CA 92253



PAID
OCT 19 2015
CITY OF LA QUINTA
COMMUNITY DEVELOPMENT DEPARTMENT

Contractor:
MDC CONSTRUCTION
68135 BELLA VISTA ROAD
CATHEDRAL CITY, CA 92234

(760)559-4535
Llc. No.: 657940

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### LICENSED CONTRACTOR'S DECLARATION

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.
License Class: C33, B      License No.: 657940

Date: 10-19-15      Contractor:

### OWNER-BUILDER DECLARATION

I hereby affirm under penalty of perjury that I am exempt from the Contractor's State License Law for the following reason (Sec. 7031.5, Business and Professions Code: Any city or county that requires a permit to construct, alter, improve, demolish, or repair any structure, prior to its issuance, also requires the applicant for the permit to file a signed statement that he or she is licensed pursuant to the provisions of the Contractor's State License Law (Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code) or that he or she is exempt therefrom and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to a civil penalty of not more than five hundred dollars ($500).:

(___) I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale. (Sec. 7044, Business and Professions Code: The Contractors' State License Law does not apply to an owner of property who builds or improves thereon, and who does the work himself or herself through his or her own employees, provided that the improvements are not intended or offered for sale. If, however, the building or improvement is sold within one year of completion, the owner-builder will have the burden of proving that he or she did not build or improve for the purpose of sale.).

(___) I, as owner of the property, am exclusively contracting with licensed contractors to construct the project. (Sec. 7044, Business and Professions Code: The Contractors' State License Law does not apply to an owner of property who builds or improves thereon, and who contracts for the projects with a contractor(s) licensed pursuant to the Contractors' State License Law.).

(___) I am exempt under Sec. _____, B.&P.C. for this reason _____
_____

Date: _____ Owner: _____

### CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.).

Lender's Name: _____

Lender's Address: _____

### WORKER'S COMPENSATION DECLARATION

I hereby affirm under penalty of perjury one of the following declarations:

_____ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

_____ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:
Carrier: _____ Policy Number: _____

_____ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that, if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date: 10-19-15    Applicant:

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000). IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

### APPLICANT ACKNOWLEDGEMENT

IMPORTANT: Application is hereby made to the Building Official for a permit subject to the conditions and restrictions set forth on this application.

1. Each person upon whose behalf this application is made, each person at whose request and for whose benefit work is performed under or pursuant to any permit issued as a result of this application , the owner, and the applicant, each agrees to, and shall defend, indemnify and hold harmless the City of La Quinta, its officers, agents, and employees for any act or omission related to the work being performed under or following issuance of this permit.

2. Any permit issued as a result of this application becomes null and void if work is not commenced within 180 days from date of issuance of such permit, or cessation of work for 180 days will subject permit to cancellation.

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Date: 10-19-15  Signature (Applicant or Agent):

## FINANCIAL INFORMATION

| DESCRIPTION | ACCOUNT | QTY | AMOUNT | PAID | PAID DATE |
|---|---|---|---|---|---|
| BSAS SB1473 FEE | 101-0000-20306 | 0 | $1.00 | $1.00 | 10/19/15 |
| PAID BY | METHOD | | RECEIPT # | CHECK # | CLTD BY |
| PAULA ZIEGLER LADEDA | CASH | | R10100 | | SKH |
| Total Paid for BUILDING STANDARDS ADMINISTRATION BSA: | | | $1.00 | $1.00 | |
| DESCRIPTION | ACCOUNT | QTY | AMOUNT | PAID | PAID DATE |
| POWER APPARATUS | 101-0000-42403 | 0 | $24.17 | $24.17 | 10/19/15 |
| PAID BY | METHOD | | RECEIPT # | CHECK # | CLTD BY |
| PAULA ZIEGLER LADEDA | CHECK | | R10097 | 2291 | SKH |
| DESCRIPTION | ACCOUNT | QTY | AMOUNT | PAID | PAID DATE |
| POWER APPARATUS PC | 101-0000-42600 | 0 | $24.17 | $24.17 | 10/19/15 |
| PAID BY | METHOD | | RECEIPT # | CHECK # | CLTD BY |
| PAULA ZIEGLER LADEDA | CHECK | | R10097 | 2291 | SKH |
| Total Paid for ELECTRICAL: | | | $48.34 | $48.34 | |
| DESCRIPTION | ACCOUNT | QTY | AMOUNT | PAID | PAID DATE |
| PERMIT ISSUANCE | 101-0000-42404 | 0 | $91.85 | $91.85 | 10/19/15 |
| PAID BY | METHOD | | RECEIPT # | CHECK # | CLTD BY |
| PAULA ZIEGLER LADEDA | CHECK | | R10097 | 2291 | SKH |
| Total Paid for PERMIT ISSUANCE: | | | $91.85 | $91.85 | |
| | | TOTALS: | $141.19 | $141.19 | |

# Permit Details
## City of La Quinta

**PERMIT NUMBER**
**BELC2015-0096**


Process Summary

Description: ZIEGLER LADEDA / INSTALL ELECTRICAL PANEL

| | | |
|---|---|---|
| Type: ELECTRICAL | Subtype: | Status: UNDER REVIEW | Applied: 10/19/2015 SKH |

Site Address: 55075 MONROE ST ST LA QUINTA, CA 92253

Parcel No: 767580013

Subdivision:      Block:      Lot:

Lot Sq Ft: 0

Building Sq Ft: 0      Zoning:

Valuation: $2,000.00      Occupancy Type:      Construction Type:

No. Buildings: 0      No. Stories: 0      No. Unites: 0

Details: INSTALL NEW 600AMP ELECTRICAL METER. 2013 CALIFORNIA BUILDING CODES.

Approved:
Issued:
Finaled:
Expired:

### ADDITIONAL SITES

### CHRONOLOGY

### CONDITIONS

### CONTACTS

| NAME TYPE | NAME | ADDRESS1 | CITY | STATE | ZIP | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|
| APPLICANT | PAULA ZIEGLER LADEDA | 55075 MONROE | LA QUINTA | CA | 92253 | | | |
| CONTRACTOR | MDC CONSTRUCTION | 68135 BELLA VISTA ROAD | CATHEDRAL CITY | CA | 92234 | | | |
| OWNER | MARK LADEDA | 55075 MONROE ST | LA QUINTA | CA | 92253 | | | |

### FINANCIAL INFORMATION

Printed: Monday, October 19, 2015 11:49:06 AM

1 of 2

CRW SYSTEMS

## Permit Details
### City of La Quinta

**PERMIT NUMBER**
**BELC2015-0096**

| DESCRIPTION | ACCOUNT | QTY | AMOUNT | PAID | PAID DATE | RECEIPT # | CHECK # | METHOD | PAID BY | CLTD BY |
|---|---|---|---|---|---|---|---|---|---|---|
| BSAS SB1473 FEE | 101-0000-20306 | 0 | $1.00 | $1.00 | 10/19/15 | R10100 | | CASH | PAULA ZIEGLER LADEDA | SKH |
| Total Paid for BUILDING STANDARDS ADMINISTRATION BSAS: | | | $1.00 | $1.00 | | | | | | |
| POWER APPARATUS | 101-0000-42403 | 0 | $24.17 | $24.17 | 10/19/15 | R10097 | 2291 | CHECK | PAULA ZIEGLER LADEDA | SKH |
| POWER APPARATUS PC | 101-0000-42600 | 0 | $24.17 | $24.17 | 10/19/15 | R10097 | 2291 | CHECK | PAULA ZIEGLER LADEDA | SKH |
| Total Paid for ELECTRICAL: | | | $48.34 | $48.34 | | | | | | |
| PERMIT ISSUANCE | 101-0000-42404 | 0 | $91.85 | $91.85 | 10/19/15 | R10097 | 2291 | CHECK | PAULA ZIEGLER LADEDA | SKH |
| Total Paid for PERMIT ISSUANCE: | | | $91.85 | $91.85 | | | | | | |
| **TOTALS:** | | | **$141.19** | **$141.19** | | | | | | |

**INSPECTIONS**

**PARENT PROJECTS**

**REVIEWS**

| REVIEW TYPE | REVIEWER | SENT DATE | DUE DATE | RETURNED DATE | STATUS | REMARKS |
|---|---|---|---|---|---|---|
| | | | | | | |

**BOND INFORMATION**

**ATTACHMENTS**

NOTES

CRW SYSTEMS

| Bin # | | City of La Quinta |
|---|---|---|
| | | Building & Safety Division |
| Permit # | | P.O. Box 1504, 78-495 Calle Tampico |
| BELC2015-0096 | | La Quinta, CA 92253 - (760) 777-7012 |
| | | Building Permit Application and Tracking Sheet |

| | | |
|---|---|---|
| Project Address: | Owner's Name: | Paula Ziegler Ladeda |
| A. P. Number: | Address: | 55075 Monroe st. |
| Legal Description: | City, ST, Zip: | La Quinta, CA 92253 |
| Contractor: | Telephone: | 949-212-4208 |
| Address: | Project Description: | |
| City, ST, Zip: | Upgrading Power Panel | |
| Telephone: | to 600 amp | |
| State Lic. # : 1066735    City Lic. #: | | |
| Arch., Engr., Designer: | | |
| Address: | | |
| City, ST, Zip: | | |
| Telephone: | Construction Type:        Occupancy: | |
| State Lic. #: | Project type (circle one): New  Add'n  Alter  Repair  Demo | |
| Name of Contact Person: | Sq. Ft.:        # Stories:        # Units: | |
| Telephone # of Contact Person: | Estimated Value of Project: $ 2,000 | |

## APPLICANT: DO NOT WRITE BELOW THIS LINE

| # | Submittal | Req'd | Rec'd | TRACKING | | PERMIT FEES | |
|---|---|---|---|---|---|---|---|
| | Plan Sets | | | Plan Check submitted | | Item | Amount |
| | Structural Calcs. | | | Reviewed, ready for corrections | | Plan Check Deposit | |
| | Truss Calcs. | | | Called Contact Person | | Plan Check Balance | |
| | Title 24 Calcs. | | | Plans picked up | | Construction | |
| | Flood plain plan | | | Plans resubmitted | | Mechanical | |
| | Grading plan | | | 2nd Review, ready for corrections/issue | | Electrical | |
| | Subcontactor List | | | Called Contact Person | | Plumbing | |
| | Grant Deed | | | Plans picked up | | S.M.I. | |
| | H.O.A. Approval | | | Plans resubmitted | | Grading | |
| | IN HOUSE: | | | 3rd Review, ready for corrections/issue | | Developer Impact Fee | |
| | Planning Approval | | | Called Contact Person | | A.I.P.P. | |
| | Pub. Wks. Appr | | | Date of permit issue | | | |
| | School Fees | | | | | | |
| | | | | | | Total Permit Fees | |

1

**PROOF OF SERVICE**

2    The undersigned declares:

3        I am employed in the County of Los Angeles, State of California. I am over the age of 18
and am not a party to the within action; my business address is c/o Nossaman LLP, 777 S.

4    Figueroa Street, 34th Floor, Los Angeles, CA 90017.
        On December 11, 2019, I served the foregoing **SUMMONS ON FIRST AMENDED**

5    **COMPLAINT AND FIRST AMENDED COMPLAINT FOR: (1) BREACH OF**
    **WRITTEN CONTRACT – SELLING DEFENDANT;**

6    **(2) NEGLIGENCE – PRIOR OWNER DEFENDANTS; (3) FRAUDULENT**
    **INTENTIONAL MISREPRESENTATION – DEFENDANT ZIEGLER AND**

7    **SUCCESSOR TRUSTEE DEFENDANT; (4) FRAUDULENT CONCEALMENT–**
    **SELLING DEFENDANT AND BROKER DEFENDANTS; (5) FRAUDULENT**

8    **INTENTIONAL MISREPRESENTATION AND CONCEALMENT – SELLING**
    **DEFENDANT; (6) NEGLIGENT MISREPRESENTATION – SELLING DEFENDANT**

9    **AND BROKER DEFENDANTS** on parties to the within action listed in the attached service
list:

10

11    ☑    (By U.S. Mail) On the same date, at my said place of business, Copy enclosed in a sealed
        envelope, addressed as shown on the attached service list was placed for collection and

12        mailing following the usual business practice of my said employer. I am readily familiar
        with my said employer's business practice for collection and processing of

13        correspondence for mailing with the United States Postal Service, and, pursuant to that
        practice, the correspondence would be deposited with the United States Postal Service,

14        with postage thereon fully prepaid, on the same date at Los Angeles, California.

15    ☐    (By Overnight Service) I served a true and correct copy by overnight delivery service for
        delivery on the next business day. Each copy was enclosed in an envelope or package

16        designated by the express service carrier; deposited in a facility regularly maintained by

17        the express service carrier or delivered to a courier or driver authorized to receive
        documents on its behalf; with delivery fees paid or provided for; addressed as shown on

18        the accompanying service list.

19    ☐    (By Electronic Service) By emailing true and correct copies to the persons at the
        electronic notification address(es) shown on the accompanying service list. The

20        document(s) was/were served electronically and the transmission was reported as

21        complete and without error.

22        Executed on December 11, 2019.

23    ☑    (STATE) I declare under penalty of perjury under the laws of the State of California that
        the foregoing is true and correct.

24

25    ☐    (FEDERAL) I declare under penalty of perjury under the laws of the United States of
        America that the foregoing is true and correct.

26

27        _____
        KARYN A. APODACA

28

- 1 -

57082993.v1

1

## SERVICE LIST

2

*Morrow v. Dill, et al.*

3

Riverside County Superior Court – Palm Springs District - Case No. PSC1905078

4
5
6
7

Anna G. Kudla
WALSWORTH WFBM, LLP
One City Boulevard West, Fifth Floor
Orange, CA 92868
T  (714) 634-2522 ext. 3369
agkudla@wfbm.com

*Attorneys for Defendants, Susan Harvey, an
individual, and Desert Pacific Properties,
Inc., a California corporation*

8
9
10
11
12

Anthony (Nino) Capobianco
Capobianco Law Offices, P.C.
41990 Cook Street, Bldg. F, Suite 2006
Palm Desert, CA 92211
T: (760) 568-6500
F: (760) 568-0100
acapobianco@capobiancolaw.com

*Attorneys for Defendant, Paula L. Ziegler,
individually and as Successor Trustee of the
Mark A. Ladeda Separate Trust, dated
November 11, 2014*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 2 -
PROOF OF SERVICE

57082993.v1

# EXHIBIT "B"

CM-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY          STATE BAR NUMBER: 162551 | FOR COURT USE ONLY |
|---|---|
| NAME: Anthony Capobianco (SBN 162551) / Derek Wallen (SBN 214477) | |

ATTORNEY OR PARTY WITHOUT ATTORNEY          STATE BAR NUMBER: 162551
NAME: Anthony Capobianco (SBN 162551) / Derek Wallen (SBN 214477)
FIRM NAME: Capobianco Law Offices, P.C.
STREET ADDRESS: 41990 Cook Street, Bldg. F, Suite 2006
CITY: Palm Desert          STATE: CA    ZIP CODE: 92211
TELEPHONE NO.: (760) 568-6500      FAX NO.: (760) 568-0100
E-MAIL ADDRESS: acapobianco@capobiancolaw.com / dwallen@capobiancolaw.com
ATTORNEY FOR (name): Paula L. Ziegler, individually and as Successor Trustee

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 3255 E. Tahquitz Canyon Way
MAILING ADDRESS: 3255 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
BRANCH NAME: Palm Springs

PLAINTIFF: JAMES SCOTT MORROW et al.

DEFENDANT: BRENT DILL and EILEEN DILL et al.

**NOTICE OF STAY OF PROCEEDINGS**

CASE NUMBER:
PSC 1905078

JUDGE: Kira L. Klatchko
DEPT.: PS1

**To the court and to all parties:**

1. Declarant *(name):*    Anthony Capobianco

   a. [X] is [ ] the party [X] the attorney for the party who requested or caused the stay.

   b. [ ] is [ ] the plaintiff or petitioner [ ] the attorney for the plaintiff or petitioner. The party who requested the stay
   has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. [ ] With regard to all parties.

   b. [X] With regard to the following parties *(specify by name and party designation):* Defendant Paula L. Ziegler

3. Reason for the stay:

   a. [X] Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the
   bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number,
   debtor, and petitioners.)*

   b. [ ] Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. [ ] Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing
   arbitration.)*

   d. [ ] Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the
   client's request for arbitration showing filing and service.)*

   e. [ ] Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 15, 2020

Anthony Capobianco
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California
CM-180 [Rev. January 1, 2007]

**NOTICE OF STAY OF PROCEEDINGS**

Cal. Rules of Court, rule 3.650
www.courts.ca.gov

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF IDAHO

| Case number *(if known)* | 20-40042-JMM | Chapter you are filing under: |
|---|---|---|

Chapter you are filing under:

■ Chapter 7

☐ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** | | |
| Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | **Paula**<br>First name | First name |
| | **Lynne**<br>Middle name | Middle name |
| Bring your picture identification to your meeting with the trustee. | **Ziegler**<br>Last name and Suffix (Sr., Jr., II, III) | Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. | | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-8281** | |

## PROOF OF SERVICE

*James Scott Morrow et al. v. Brent Dill and Eileen Dill et al.*

### Case No. PSC 1905078

The undersigned certifies and declares as follows.

I am a resident of the County of Riverside, State of California, and I am over the age of eighteen (18) years and not a party to the above-entitled action. My business address is Capobianco Law Offices, P.C., 41990 Cook Street, Bldg. F, Suite 2006, Palm Desert, California 92211.

On, January 15, 2020, I caused the following documents to be served as indicated below:

- **Notice of Stay of Proceedings**

| | |
|---|---|
| **X** | **MAIL** being familiar with the practice of this office for the collection and the processing of correspondence for mailing with the United States Postal Service, and deposited in the United States Mail copies of same to the addresses set forth below, in a sealed envelope, with postage fully prepaid. |
| | **OVERNIGHT DELIVERY** by placing same in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses set forth below and placing the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |

John J. Flynn III
Gregory W. Sanders
NOSSAMAN LLP
18101 Von Karman Avenue
Suite 1800
Irvine, CA 92612

Gabriela S. Perez
NOSSAMAN LLP
777 S. Figueroa Street
34th Floor
Los Angeles, CA 90017

Anna G. Kudla
WALSWORTH WFBM, LLP
One City Boulevard West, Fifth Floor
Orange, CA 92868

Diane C. Blasdel
P.O. Box 1747
Palm Springs, CA 92263

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 15, 2020, at Palm Desert, California.

Michele Fiorentine

CAPOBIANCO LAW OFFICES, P.C.
A PROFESSIONAL CORPORATION

# EXHIBIT "C"

RECEIVED
**2/4/2020**

1 | NOSSAMAN LLP
JOHN J. FLYNN III (SBN 76419)
2 | jflynn@nossaman.com
GREGORY W. SANDERS (SBN 78023)
3 | gsanders@nossaman.com
18101 Von Karman Avenue, Suite 1800
4 | Irvine, CA 92612
Telephone: 949.833.7800
5 | Facsimile:  949.833.7878

6 | NOSSAMAN LLP
GABRIELA S. PEREZ (SBN 322161)
7 | gperez@nossaman.com
777 S. Figueroa Street, 34th Floor
8 | Los Angeles, CA 90017
Telephone: 213.612.7800
9 | Facsimile:  213.612.7801

10 | Attorneys for Plaintiffs JAMES SCOTT MORROW, an individual;
DANIELLE MORROW, an individual; and MORROW RANCH
11 | LA QUINTA, LLC, a California limited liability company

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 25 2020

Lucero Zuniga

MAR 1 0 2020

12 | 　　　　SUPERIOR COURT OF THE STATE OF CALIFORNIA

13 | 　　　　FOR THE COUNTY OF RIVERSIDE - PALM SPRINGS

14 |

15 | JAMES SCOTT MORROW, an individual;
DANIELLE MORROW, an individual; and
16 | MORROW RANCH LA QUINTA, LLC, a
California limited liability company,; and
17 | MORROW RANCH LA QUINTA, LLC, a
California limited liability company,
18 |

19 | 　　　　　　　　Plaintiffs,

20 | 　　　　vs.

21 | BRENT DILL and EILEEN DILL, as Co-
Trustees of the Dill Family 2015 Trust, dated
22 | September 8, 2015; SUSAN HARVEY, an
individual; DESERT PACIFIC PROPERTIES,
23 | INC., a California corporation; MARK A.
LADEDA, an individual; PAULA L.
24 | ZIEGLER, individually and as Successor
Trustee of the Mark A. Ladeda Separate
25 | Property Trust, dated November 11, 2014;
TALLY RANCH INC., a Nevada corporation;
26 | M & P VENTURES #1, Inc., a Nevada
corporation; and DOES 1-60, inclusive,
27 |

28 | 　　　　Defendants.

Case No:    PSC1905078

Assigned to:
Hon. Kira L. Klatchko
Dept: PS1 (For All Purposes)

**STIPULATION AND [PROPOSED]
ORDER STAYING THE ACTION**

Action Filed:    July 23, 2019
FAC Filed:    December 11, 2019
Trial Date:    None

- 1 -
STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332735.v1

1     Plaintiffs James Scott Morrow, Danielle Morrow, and Morrow Ranch La Quinta, LLC

2 (collectively, "Plaintiffs") and Defendants Brent Dill and Eileen Dill, as Co-Trustees of the Dill

3 Family 2015 Trust, dated September 8, 2015 (the "Dills"), Susan Harvey ("Harvey"), and Desert

4 Pacific Properties, Inc. (collectively, the "Parties"), without admission of any kind, or waiver of

5 any defense, objection, or other response, hereby stipulate, by and through their respective

6 counsel of record, as follows:

7 **RECITALS**

8     WHEREAS, on July 23, 2019, Plaintiffs filed their Complaint against Defendants the

9 Dills, Harvey, Desert Pacific Properties, Mark A. Ladeda, Paula L. Ziegler, individually and as

10 Successor Trustee of the Mark A. Ladeda Separate Property Trust, dated November 11, 2014

11 ("Ziegler"), Tally Ranch Inc., and M & P Ventures #1, Inc. (collectively, "Defendants"), thereby

12 commencing this lawsuit (the "Action").

13     WHEREAS, on December 11, 2019 Plaintiffs filed a First Amended Complaint

14 containing new factual allegations against Defendants Ziegler, Harvey, and Desert Pacific

15 Properties.

16     WHEREAS, on January 7, 2020, Plaintiffs and Defendants Harvey and Desert Pacific

17 Properties, Inc. entered into a stipulation regarding Plaintiffs' Fourth Cause of Action and claim

18 for punitive damages against Defendants Harvey and Desert Pacific Properties, Inc. And on

19 January 22, 2020 the Court entered an Order that:

20

21      1. In consideration of [Harvey and Desert Pacific Properties, Inc.]
agreement to defer a demurrer or other contest of the First Amended Complaint

22 until after mediation, the Fourth Cause of Action for Fraudulent Concealment is
hereby dismissed without prejudice from Plaintiffs' First Amended Complaint for

23 damages as to both [Harvey and Desert Pacific Properties, Inc.] only, each party to
bear their own costs and fees as it relates to this claim. Should Plaintiffs become

24 aware of new or additional facts, Plaintiffs may seek to amend their operative
pleading.

25      2. Plaintiff is granted 10 days to file an amended complaint that does not
seek the imposition of punitive damages against either [Harvey or Desert Pacific

26 Properties, Inc.]

27

28

- 2 -

57332735.v1

1      WHEREAS, Plaintiffs and Defendants the Dills, Harvey, Desert Pacific Properties, Inc.,

2 and Ziegler each had previously agreed to participate in a mediation.

3      WHEREAS, on January 14, 2020 Defendant Ziegler filed a voluntary petition

4 commencing a Chapter 7 bankruptcy case in which Ziegler is the debtor in the United States

5 Bankruptcy Court, District of Idaho, Case No. 20-40042-JMM ("Bankruptcy Case") and

6 subsequently filed a Notice of Stay of Proceedings with the Court herein on January 15, 2020.

7      WHEREAS, the Case Management Conference was continued from January 22, 2020 to

8 March 11, 2020 on the Court's own motion.

9      WHEREAS, the Parties have met and conferred and have agreed that it is in the best

10 interest of the Parties litigating the Action, and in the interest of judicial economy, for the Action

11 to be stayed as to all proceedings subject to the terms herein. The Action is already stayed as

12 against Defendant Ziegler by reason of the bankruptcy filing by such defendant identified in her

13 petition as Paula Lynn Ziegler. The Parties desire to stay the entire action as against other

14 defendants as well until the earlier of: (a) entry of an order in the Bankruptcy Case granting relief

15 from the automatic stay under 11 U.S.C. § 362, modifying the automatic stay to permit

16 prosecution of the action as against Ziegler in whole or in part, or termination of such automatic

17 stay with respect to Ziegler by operation of law; or (b) entry of an order in the Bankruptcy Case

18 allowing Plaintiffs' claim against Ziegler, entry of an order in the Bankruptcy Case denying a

19 discharge therein to Ziegler pursuant to 11 U.S.C. § 727 or otherwise, or entry of an order in the

20 Bankruptcy Case determining the Plaintiffs' claims against Ziegler are excepted from a discharge

21 therein pursuant to 11 U.S.C. § 523; or (c) thirty (30) days after any of the Parties give the other

22 Parties and the Court notice of such Party's request to terminate the stay respecting parties other

23 than Ziegler pursuant to this stipulation. Notwithstanding anything to the contrary herein, the

24 stay of the within Action as against Ziegler shall continue so long as the automatic stay under 11

25 U.S.C. § 362 applies thereto.

26                                    **STIPULATION**

27      NOW, THEREFORE, it is hereby stipulated by and between the Parties and their

28 respective counsel of record, subject to approval of this Court, that:

STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332735.v1

1    1.    All proceedings in this Action should be stayed until the earlier of: (a)

2    entry of an order in the Bankruptcy Case granting relief from the automatic stay under 11 U.S.C.

3    § 362, modifying the automatic stay to permit prosecution of the action as against Ziegler in

4    whole or in part, or termination of such automatic stay with respect to Ziegler by operation of

5    law; or (b) entry of an order in the Bankruptcy Case allowing Plaintiffs' claim against Ziegler,

6    entry of an order in the Bankruptcy Case denying a discharge therein to Ziegler pursuant to 11

7    U.S.C. § 727 or otherwise, or entry of an order in the Bankruptcy Case determining the

8    Plaintiffs' claims against Ziegler are excepted from a discharge therein pursuant to 11 U.S.C. §

9    523; or (c) thirty (30) days after any of the Parties give the other Parties and the Court notice of

10   such Party's request to terminate the stay respecting parties other than Ziegler pursuant to this

11   stipulation.  Notwithstanding anything to the contrary herein, the stay of the within Action as

12   against Ziegler shall continue so long as the automatic stay under 11 U.S.C. § 362 applies

13   thereto.

14   2.    The Plaintiffs are to file an amended complaint per the Court's January 22,

15   2020 Order dismissing, without prejudice, the Fourth Cause of Action for Fraudulent

16   Concealment as to both Harvey and Desert Pacific Properties, Inc., only, and that does not seek

17   the imposition of punitive damages against either Harvey or Desert Pacific Properties, Inc.,

18   within 10 days after the date the stay in this Action pursuant to this stipulation and the automatic

19   stay with respect to Ziegler are both terminated.

20   3.    The following pretrial deadlines shall also be continued until after

21   termination of the stay in this Action pursuant to this Stipulation: the Case Management

22   Conference scheduled for March 11, 2020, shall be continued approximately one month

23   following termination of the stay.

24   **IT IS SO STIPULATED.**

25   ///

26   ///

27   ///

28   ///

-4-

STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332735.v1

1    Dated:  February 3, 2020

2

3

4

5

6

7

8

9

10

11  Dated:  February 3, 2020

12

13

14

15

16

17

18

19  Dated:  February 3, 2020

20

21

22

23

24

25

26

27

28

NOSSAMAN LLP
JOHN J. FLYNN III
GREGORY W. SANDERS
GABRIELA S. PEREZ


By: _____
            John J. Flynn III
Attorneys for Plaintiffs JAMES SCOTT
MORROW, an individual; DANIELLE MORROW,
an individual; and MORROW RANCH LA
QUINTA, LLC, a California limited liability
company


Reema Abboud
WALSWORTH WFBM, LLP



By: _____
            Reema Abboud
Attorneys for Defendants, SUSAN HARVEY, an
individual, and DESERT PACIFIC PROPERTIES,
INC., a California corporation



Diane C. Blasdel, Esq.
BLASDEL GUINAN LAWYERS



By: _____
            Diane C. Blasdel
Attorneys for Defendants BRENT DILL and
EILEEN DILL, as Co-Trustees of the Dill Family
2015 Trust, dated September 8, 2015

- 5 -
STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332735.v1

1    Dated: January 30, 2020

2                                   NOSSAMAN LLP
                                       JOHN J. FLYNN III
3                                     GREGORY W. SANDERS
                                     GABRIELA S. PEREZ

4

5                                     By: _____
                                             John J. Flynn III
6                                     Attorneys for Plaintiffs JAMES SCOTT
                                     MORROW, an individual; DANIELLE MORROW,
7                                     an individual; and MORROW RANCH LA
                                     QUINTA, LLC, a California limited liability
8                                     company

9

10

11   Dated: January 30, 2020                          Reema Abboud
                                     WALSWORTH WFBM, LLP
12

13

14                                   By: _____
                                           Reema Abboud
15                                     Attorneys for Defendants, SUSAN HARVEY, an
                                     individual, and DESERT PACIFIC PROPERTIES,
16                                     INC., a California corporation

17

18

19   Dated: January 30, 2020                          Diane C. Blasdel, Esq.
                                     BLASDEL GUINAN LAWYERS

20

21                                   By: _____
22                                             Diane C. Blasdel
                                     Attorneys for Defendants BRENT DILL and
23                                   EILEEN DILL, as Co-Trustees of the Dill Family
                                   2015 Trust, dated September 8, 2015

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332735;v1

1

**[PROPOSED] ORDER**

2    Having read and considered the stipulation by and between Plaintiffs James Scott

3  Morrow, Danielle Morrow, and Morrow Ranch La Quinta, LLC (collectively, "Plaintiffs") and

4  Defendants Brent Dill and Eileen Dill, as Co-Trustees of the Dill Family 2015 Trust, dated

5  September 8, 2015 (the "Dills"), Susan Harvey ("Harvey"), and Desert Pacific Properties, Inc.

6  (collectively, the "Parties") to stay this Action, and good cause appearing therefore, the Court

7  hereby APPROVES the stipulation and grants the relief requested as follows:

8        1.    All proceedings in this Action should be stayed until the earlier of: (a)

9  entry of an order in the Bankruptcy Case granting relief from the automatic stay under 11 U.S.C.

10  § 362, modifying the automatic stay to permit prosecution of the action as against Ziegler in

11  whole or in part, or termination of such automatic stay with respect to Ziegler by operation of

12  law; or (b) entry of an order in the Bankruptcy Case allowing Plaintiffs' claim against Ziegler,

13  entry of an order in the Bankruptcy Case denying a discharge therein to Ziegler pursuant to 11

14  U.S.C. § 727 or otherwise, or entry of an order in the Bankruptcy Case determining the

15  Plaintiffs' claims against Ziegler are excepted from a discharge therein pursuant to 11 U.S.C. §

16  523; or (c) thirty (30) days after any of the Parties give the other Parties and the Court notice of

17  such Party's request to terminate the stay respecting parties other than Ziegler pursuant to this

18  stipulation. Notwithstanding anything to the contrary herein, the stay of the within Action as

19  against Ziegler shall continue so long as the automatic stay under 11 U.S.C. § 362 applies

20  thereto.

21        2.    The Plaintiffs are to file an amended complaint per the Court's January 22,

22  2020 Order dismissing, without prejudice, the Fourth Cause of Action for Fraudulent

23  Concealment as to both Harvey and Desert Pacific Properties, Inc., only, and that does not seek

24  the imposition of punitive damages against either Harvey or Desert Pacific Properties, Inc.,

25  within 10 days after the date the stay in this Action pursuant to this Order and the automatic stay

26  with respect to Ziegler are both terminated.

27        3.    The following pretrial deadlines shall also be continued until after

28  termination of the stay in this Action pursuant to this Order: the Case Management Conference

STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION

57332736.v1

1 | scheduled for March 11, 2020, ~~shall be continued approximately one month following~~

2 | ~~termination of the stay.~~ vacated.

3 | 4. If any occurence identified in paragraph 4 takes place, Plaintiffs to notify Court within 10 days.

4 | 5. Status conference set August 3, 2020 @ 8:30am, re Bankruptcy.

5 | Date: 2/25/20

6 | HON. KIRA L. KLATCHKO

- 7 -

**PROOF OF SERVICE**

The undersigned declares:

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action; my business address is c/o Nossaman LLP, 777 S. Figueroa Street, 34th Floor, Los Angeles, CA 90017.

     On February 4, 2020, I served the foregoing **STIPULATION AND [PROPOSED] ORDER STAYING THE ACTION** on parties to the within action listed in the attached service list:

☑    (By U.S. Mail)  On the same date, at my said place of business, Copy enclosed in a sealed envelope, addressed as shown on the attached service list  was placed for collection and mailing following the usual business practice of my said employer.  I am readily familiar with my said employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service, and, pursuant to that practice, the correspondence would be deposited with the United States Postal Service, with postage thereon fully prepaid, on the same date at Los Angeles, California.

☐    (By Overnight Service)  I served a true and correct copy by overnight delivery service for delivery on the next business day.  Each copy was enclosed in an envelope or package designated by the express service carrier; deposited in a facility regularly maintained by the express service carrier or delivered to a courier or driver authorized to receive documents on its behalf; with delivery fees paid or provided for; addressed as shown on the accompanying service list.

☐    (By Electronic Service) By emailing true and correct copies to the persons at the electronic notification address(es) shown on the accompanying service list.  The document(s) was/were served electronically and the transmission was reported as complete and without error.

Executed on February 4, 2020.

☑    (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

RACHEL ORTIZ

57332735.v1

1

## SERVICE LIST

2

*Morrow v. Dill, et al.*

3

**Riverside County Superior Court – Palm Springs District - Case No. PSC1905078**

4

Anna G. Kudla                                    *Attorneys for Defendants, Susan Harvey, an*
5   Reema Abboud                                  *individual, and Desert Pacific Properties,*
    WALSWORTH WFBM, LLP                            *Inc., a California corporation*
6   One City Boulevard West, Fifth Floor
    Orange, CA 92868
7   T (714) 634-2522 ext. 3369
    agkudla@wfbm.com
8

9   Paula L. Ziegler                              *In Pro Per Defendant, Paula L. Ziegler,*
    1966 N. Tatonka Lane                          *individually and as Successor Trustee of the*
10  Inkom, ID 83245                               *Mark A. Ladeda Separate Trust, dated*
    T: (949) 212-4208                             *November 11, 2014*
11

12  Diane C. Blasdel, Esq.                        *Attorneys for BRENT DILL and EILEEN*
    Blasdel Guinan Lawyers                        *DILL, as Co-Trustees of the Dill Family 2015*
13  700 E. Tahquitz Canyon Way, Suite 4           *Trust, dated September 8, 2015*
    Palm Springs, CA 92262
14  P.O. Box 1747 (Mailing),
    Palm Springs, CA 92263
15  760-320-0111 Phone
    760-320-0211 Fax
16  diane@bgdesertlaw.com

17

18  Incorp Services, Inc.                         *Registered Agent for: M&P Ventures#1, Inc.,*
    3773 Howard Hughes Pkwy, Suite 500            *a Nevada Corporation*
19  Las Vegas, NV 89169

20
    Incorp Services, Inc.                         *Registered Agent for: Tally Ranch Inc.*
21  3773 Howard Hughes Pkwy, Suite 500
    Las Vegas, NV 89169
22

23

24

25

26

27

28

PROOF OF SERVICE
57332735.v1